TWENTIETH CENTURY ASSOCIATES, INC., Appellant, v. ADOLPH WALDMAN, Doing Business under the Name of THE ARDMORE MANUFACTURING COMPANY, Respondent.

Argued June 13, 1945; decided July 19, 1945.

*Charles Gottlieb, Alexander S. Natanson* and *Marvin L. Loth-stein* for appellant. I. Insofar as chapter 3 of the Laws of 1945, as amended by chapter 315 of the Laws of 1945, applies to leases executed prior to January 24, 1945, its effective date, it violates section 10 of article I of the Constitution of the United States. The statute impairs the obligations of leases executed prior to January 24, 1945. II. The impairment feature of the statute was not a reasonable exercise of the police power, and therefore not constitutional. (*Indiana ex rel. Anderson* v. *Brand*, 303 U. S. 95; *Treigle* v. *Acme Homestead Ass'n*, 297 U. S. 189; *Matter of People* [*Tit. & Mtge. Guar. Co.*], 264 N. Y. 69; *Baldwin* v. *G. A. F. Seelig*, 294 U. S. 511; *Sturges* v. *Crowninshield*, 17 U. S. 120; *Edwards* v. *Kearzey*, 96 U. S. 595; *Paterno Investing Corp.* v. *Katz*, 112 Misc. 242, 193 App. Div. 897; *Orinoco Realty Co.* v. *Bandler*, 233 N. Y. 24; *Sylvan Mortgage Co., Inc.*, v. *Stadler*, 115 Misc. 311; *People ex rel. Durham R. Corp.* v. *La Fetra*, 230 N. Y. 429; *Home Bldg. and L. Assn.* v. *Blaisdell*, 290 U. S. 298.) III. The alleged threat of inflation does not justify the impairment feature of the statute. IV. The statutory impairment of the obligation to pay rentals on pre-

existing leases cannot be sustained under the legislative excuse that it was designed to " aid the successful prosecution of the war." (*Hirabayashi* v. *United States*, 320 U. S. 81; *People* v. *Mailman*, 182 Misc. 870, 293 N. Y. 887.) V. Chapter 3 of the Laws of 1945, as amended, is unconstitutional, in that it violates the due process clauses of the United States Constitution (14th Amendt., § 1) and of the Constitution of New York State (art. I, § 6). (*Nebbia* v. *New York*, 291 U. S. 502; *New State Ice Co.* v. *Liebmann*, 285 U. S. 262; *Highland* v. *Russell Car Co.*, 279 U. S. 253; *Buchanan* v. *Warley*, 245 U. S. 60; *Block* v. *Hirsh*, 256 U. S. 135.) VI. Chapter 3 of the Laws of 1945, as amended, is unconstitutional in that it violates the equal protection clauses of the United States Constitution (14th Amendt., § 1) and of the New York State Constitution (art. I, § 11). (*Smith* v. *Cahoon*, 283 U. S. 553; *Skiriotes* v. *Florida*, 313 U. S. 69; *People ex rel. Farrington* v. *Mensching*, 187 N. Y. 8.)

*Edwin W. Cooney* and *Pauline Taylor* for City Bank Farmers Trust Company, *amicus curiæ*, in support of appellant's position. The provisions of the act that completely prohibit the collection of excess rent cannot constitutionally be applied to leases made before the effective date. (*Orinoco Realty Co.* v. *Bandler*, 233 N. Y. 24; *Nebbia* v. *New York*, 291 U. S. 511; *Midland Co.* v. *K. C. Power Co.*, 300 U. S. 109; *Marcus Brown Co.* v. *Feldman*, 256 U. S. 170; *Levy Leasing Co.* v. *Siegel*, 258 U. S. 242; *Home Bldg. & L. Assn.* v. *Blaisdell*, 290 U. S. 398; *Worthen Co.* v. *Kavanaugh*, 295 U. S. 56; *Gelfert* v. *National City Bank*, 313 U. S. 221; *East N. Y. Savings Bank* v. *Hahn*, 293 N. Y. 622; *W. B. Worthen Co.* v. *Thomas*, 292 U. S. 426.)

*John C. Crawley* and *Henry W. Proffitt* for The Seamen's Bank for Savings in the City of New York, *amicus curiæ*, in support of appellant's position.

*Martin S. House* and *Adolph S. Ziegler* for Mid-Manhattan Management Corp., *amicus curiæ*, in support of appellant's position. I. Section 7 of the Rent Control Act violates article I, section 10, of the Constitution of the United States. Regardless of the supposed emergency, the complete annihilation of a contract without recompense to the obligee is beyond the

police power of a State. (*Sylvan Mortgage Co., Inc.,* v. *Stadler,* 115 Misc. 311, 199 App. Div. 965; *Highland* v. *Russell Car Co.,* 279 U. S. 253; *Home Bldg. & L. Assn.* v. *Blaisdell,* 290 U. S. 398; *W. B. Worthen Co.* v. *Thomas,* 292 U. S. 426; *Louisville Bank* v. *Radford,* 295 U. S. 555; *Internat. Steel Co.* v. *Surety Co.,* 297 U. S. 657; *Gelfert* v. *National City Bank,* 313 U. S. 221; *Indiana ex rel. Anderson* v. *Brand,* 303 U. S. 95; *Treigle* v. *Acme Homestead Assn.,* 297 U. S. 189; *Coombes* v. *Getz,* 285 U. S. 434; *Central Savings Bank* v. *City of New York,* 279 N. Y. 266; *Hirabayashi* v. *United States,* 320 U. S. 81; *Matter of People* [*Tit. & Mtge. Guar. Co.*], 264 N. Y. 69.) II. Under the New York Emergency Rent Law of 1920, the courts of this State: (1) disavowed the possibility of destruction by a State of accrued contract rights; and (2) refused to recognize a defense of " oppressiveness " which was the creature of the statute and would not have been valid when the contract was made. (*Paterno Investing Corp.* v. *Katz,* 112 Misc. 242, 193 App. Div. 897; *Sylvan Mortgage Co., Inc.,* v. *Stadler,* 115 Misc. 311; *78th Street & Broadway Co.* v. *Rosenbaum,* 111 Misc. 577; *Orinoco Realty Co.* v. *Bandler,* 233 N. Y. 24.) III. The shortage of rentable space does not justify the cancelation of rental obligations under pre-existing leases. (*Skiriotes* v. *Florida,* 313 U. S. 69; *Health Department* v. *Rector, etc.,* 145 N. Y. 32; *Fisher Co.* v. *Woods,* 187 N. Y. 90; *Paterno Investing Corp.* v. *Katz,* 112 Misc. 242, 193 App. Div. 897; *Sylvan Mortgage Co., Inc.,* v. *Stadler,* 115 Misc. 311, 199 App. Div. 965.) IV. The State's police power cannot sustain as regulation what is in reality confiscation. (*Block* v. *Hirsh,* 256 U. S. 135.)

*Jack Gross* for respondent. I. Chapter 3 of the Laws of 1945 is a proper exercise of the State police power and covers a proper subject of State concern. (*People* v. *Perretta,* 253 N. Y. 305; *East New York Savings Bank* v. *Hahn,* 293 N. Y. 622; *Barbier* v. *Connolly,* 113 U. S. 27; *People ex rel. Durham Realty R. Corp.* v. *La Fetra,* 230 N. Y. 429; *Adler* v. *Deegan,* 251 N. Y. 467; *Nebbia* v. *New York,* 262 N. Y. 259, 291 U. S. 502; *Chamberlain, Inc.,* v. *Andrews,* 271 N. Y. 1; *Sunshine Coal Co.* v. *Adkins,* 310 U. S. 381; *Block* v. *Hirsh,* 256 U. S. 135; *Marcus Brown Co.* v. *Feldman,* 256 U. S. 170.) II. Chapter 3 of the Laws of 1945 is not an unreasonable, arbitrary or capri-

cious means of protecting the welfare of the People of the State of New York. (*Nebbia* v. *New York,* 291 U. S. 502; *Sproles* v. *Binford,* 286 U. S. 374; *Carmichael* v. *Southern Coal Co.,* 301 U. S. 495.) III. Chapter 3 of the Laws of 1945 is constitutional for it violates neither the Constitution of the United States nor of the State of New York. (*People ex rel. Durham R. Corp.* v. *La Fetra,* 230 N. Y. 429; *Levy Leasing Co.* v. *Siegel,* 230 N. Y. 634, 258 U. S. 242; *Marcus Brown Co.* v. *Feldman,* 256 U. S. 170; *Clemilt Realty Co.* v. *Wood,* 230 N. Y. 646; *Guttag* v. *Shatzkin,* 230 N. Y. 647; *810 West End Ave.* v. *Stern,* 230 N. Y. 652; *People ex rel. Rayland Realty Co.* v. *Fagan,* 230 N. Y. 653; *Matter of People [Tit. & Mtge. Guar. Co.],* 264 N. Y. 69.)

*Nathaniel L. Goldstein, Attorney-General (Orrin G. Judd, Saul A. Shames* and *Irving I. Waxman* of counsel), appearing pursuant to section 68 of the Executive Law in support of constitutionality of the Commercial Rent Law (L. 1945, ch. 3, as amd. by L. 1945, ch. 315). I. The statute having been enacted in the face of a public emergency and being designed to aid the war effort, prevent inflation and assist in providing for essential civilian needs, is a valid exercise of the State's police power, and consequently does not impinge upon any constitutional provisions. (*Matter of Fay,* 291 N. Y. 198; *People ex rel. Henderson* v. *Supervisors,* 147 N. Y. 1; *Matter of Murray* v. *LaGuardia,* 291 N. Y. 320; *Johnson* v. *City of New York,* 274 N. Y. 411; *Rosen* v. *370 West 35th St. Corp.,* 184 Misc. 172; *Sissias* v. *Perlmutter,* 184 Misc. 174.) II. The statute is a proper exercise of the State's police power. (*Levy Leasing Co.* v. *Siegel,* 258 U. S. 242; *Rosen* v. *370 West 35th St. Corp.,* 184 Misc. 172; *734 Fifth Avenue Corp.* v. *Kent-Costikyan, Inc.,* 184 Misc. 12; *Old Dearborn Co.* v. *Seagram Corp.,* 299 U. S. 183; *Matter of Stubbe* v. *Adamson,* 220 N. Y. 459; *Carmichael* v. *Southern Coal Co.,* 301 U. S. 495; *People ex rel. Durham R. Corp.* v. *La Fetra,* 230 N. Y. 429; *Veix* v. *Sixth Ward Assn.,* 310 U. S. 32.) III. The contract clause of the Federal Constitution (art. I, § 10) cannot interfere with the exercise of the police power, and all contracts are made subject to the paramount authority of the State to safeguard the vital interests of its people. (*Home Bldg. & L. Assn.* v. *Blaisdell,* 290 U. S. 398; *Stephenson*

v. *Binford,* 287 U. S. 251; *Union Dry Goods Co.* v. *Georgia P. S. Corp.,* 248 U. S. 372; *Midland Co.* v. *K. C. Power Co.,* 300 U. S. 109; *Manigault* v. *Springs,* 199 U. S. 473; *Matter of People* [*Tit. & Mtge. Guar. Co.*], 264 N. Y. 69; *People ex rel. Durham R. Corp.* v. *La Fetra,* 230 N. Y. 429.) IV. In the precise field of price-fixing statutes, in which the Commercial Rent Control Law falls, the application of State laws to pre-existing contracts has been repeatedly sustained. (*Union Dry Goods Co.* v. *Georgia P. S. Corp.,* 248 U. S. 372; *Midland Co.* v. *K. C. Power Co.,* 300 U. S. 109; *Stephenson* v. *Binford,* 287 U. S. 251; *Dillingham* v. *McLaughlin,* 264 U. S. 370.) V. The efficacy of the police power is further demonstrated by decisions passing on mortgage moratorium laws and kindred legislation. (*Home Bldg. & L. Assn.* v. *Blaisdell,* 290 U. S. 398; *Gelfert* v. *National City Bank,* 313 U. S. 221; *Honeyman* v. *Jacobs,* 306 U. S. 539; *City Bank Farmers Trust Co.* v. *Ardlea Corp.,* 267 N. Y. 224; *Klinke* v. *Samuels,* 264 N. Y. 144; *Norman* v. *B. & O. R. Co.,* 294 U. S. 240; *Veix* v. *Sixth Ward Assn.,* 310 U. S. 32; *Sliosberg* v. *New York Life Ins. Co.,* 244 N. Y. 482, 275 U. S. 526; *Faitoute Co.* v. *Asbury Park,* 316 U. S. 502.) VI. The constitutionality of the Emergency Price Control Act (50 U. S. C. A. App., § 901 *et seq.*) and regulations issued thereunder have been challenged but have uniformly been sustained. (*Bowles* v. *Willingham,* 321 U. S. 503; *Yakus* v. *United States,* 321 U. S. 414; *Taylor* v. *Brown,* 137 F. 2d 654, 320 U. S. 787; *Avant* v. *Bowles,* 139 F. 2d 702; *Chatlos* v. *Brown,* 136 F. 2d 490.) VII. The Emergency Housing Act of 1920 (L. 1920, chs. 136–37, as amd. by chs. 942, 953) was sustained against every constitutional objection both by the Supreme Court of the United States and this court. (*Levy Leasing Co.* v. *Siegel,* 230 N. Y. 634, 258 U. S. 242; *Marcus Brown Co.* v. *Feldman,* 256 U. S. 170; *Block* v. *Hirsh,* 256 U. S. 135; *People ex rel. Durham R. Corp.* v. *La Fetra,* 230 N. Y. 429, 257 U. S. 665; *People ex rel. Rayland Realty Co* v. *Fagan,* 230 N. Y. 653; *Guttag* v. *Shatzkin,* 230 N. Y. 647; *810 West End Ave., Inc.,* v. *Stern,* 230 N. Y. 652.) VIII. The Commercial Rent Law does not conflict with that provision of the Fourteenth Amendment which declares that no State shall deprive any person of liberty or property without due process of law (*Nebbia* v. *New York,* 291 U. S. 502; *Hadacheck* v. *Los Angeles,* 239 U. S. 394; *Barbier* v. *Con-*

*nolly,* 113 U. S. 27; *People ex rel. Durham R. Corp.* v. *La Fetra,* 230 N. Y. 429; *People* v. *Perretta,* 253 N. Y. 305.) IX. The requirement of the equal protection clause is satisfied when the statute applies to all persons similarly circumstanced. (*Stebbins* v. *Riley,* 268 U. S. 137; *Radice* v. *New York,* 264 U. S. 292; *Marcus Brown Co.* v. *Feldman,* 256 U. S. 170; *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283; *Northwestern Laundry* v. *Des Moines,* 239 U. S. 486; *Chamberlain, Inc.,* v. *Andrews,* 271 N. Y. 1.)

THACHER, J. Plaintiff appeals from a final judgment of the Municipal Court of the City of New York dismissing its complaint in an action to recover rent under a lease executed prior to January 24, 1945, the effective date of chapter 3 of the Laws of 1945, and seeks to review the constitutionality of said act in its application to such leases. The court below, with the consent of both parties, having construed the statute as retroactively applicable to the plaintiff's lease, we may determine the sole question of constitutional validity upon the basis of that construction. (N. Y. Const., art. VI, § 7, subd. 2; Civ. Prac. Act, § 588, subd. 4; *Doubleday, Doran & Co.* v. *Macy & Co.,* 269 N. Y. 272, 281; cf. *Matter of Chirillo,* 283 N. Y. 417, 421.)

The statute relates to the regulation, control and stabilization of rentals of premises occupied for commercial purposes in cities having more than one million inhabitants. Section 1 thereof contains the following recitals and findings* : " Section 1. Unjust, unreasonable and oppressive leases and agreements for the payment of rent for commercial space in certain cities having been and being now exacted by landlords from tenants under stress of prevailing conditions accelerated by the present war, whereby a breakdown has taken place in normal processes of bargaining and freedom of contract has become an illusory concept, and whereby there have come into existence conditions threatening to obstruct war production and the production and distribution of essential civilian commodities, and to cause inflation, and all of the foregoing situations and condi-

---

* The act was subsequently amended by L. 1945, ch. 315, after the judgment herein appealed from had been entered. No changes were made in section 1.

tions being a threat to the successful prosecution of the war and essential civilian activities, and to the public safety, health, and general welfare of the people of the state of New York, it is hereby declared that a public emergency exists, which is increasing in intensity without slackening and without promise of relief so long as present war conditions continue, and that action by the legislature is imperative and will not permit of delay. It is hereby found by the legislature that for the duration of such emergency, the establishment of a maximum rent for commercial space at a level of fifteen per centum above rents charged on March first, nineteen hundred forty-three, or at a level otherwise determined as provided herein, will curb the evils arising from such emergency and will accomplish the purposes hereby sought to be achieved. This act is declared to be a measure designed to protect and promote the public health, safety and general welfare, to aid the successful prosecution of the war, and essential civilian activities, and to prevent inflation, and is made necessary by an existing public emergency.''

This legislation followed the report of a joint legislative committee appointed pursuant to resolutions adopted in both houses of the Legislature on March 18, 1944. After exhaustive study and investigation, the committee reported its findings as follows: '' After a careful examination of the facts assembled through the investigations and studies described above, the Committee has concluded that a public emergency existed on March 1, 1943 and still exists because of the exaction and attempted exaction by landlords of unjust, unreasonable and oppressive agreements for the payment of rent with regard to certain types of commercial real property. The record is replete with illustrations of these practices. It has been found by the Committee that, because of war conditions and the suspension of building construction, there is a serious shortage of premises adapted for manufacturing and merchandising purposes. Moreover, in portions of the City of New York which are heavily tenanted by substantial merchandising establishments, there exists a similar scarcity of space suitable for use as stores. As a result, a breakdown has taken place in the normal processes of bargaining for leases between landlords and tenants of buildings falling within these two categories. Knowing that

their tenants cannot obtain space elsewhere, a considerable number of these landlords are demanding, and in many instances have obtained, exorbitant and unjust and unreasonable increases of rent when approached by their tenants for a renewal of existing leases. These demands are in many cases coupled with an insistence that the tenant sign a lease providing for a substantially longer term than that of the current rental agreement and with a reduction of services previously given. In these cases, the landlord's terms are peremptorily submitted to the tenant in ultimatum form and the latter knows that he must acquiesce or go out of business. As between landlords and tenants in this situation, freedom of contract has become an illusory concept.

" While the cost of maintaining and operating commercial properties has risen as a result of factors stemming from the war, the increases in rent which many owners of such buildings are exacting and attempting to exact are so excessive and exorbitant as to bear no reasonable relation whatsoever to augmented operating expenses. Furthermore, these increases soar far above the level of a reasonable return on an investment in real estate." Many graphic illustrations of exorbitant increases of rent contained in new leases already executed were verified by careful inquiry and set forth in the committee's report. The effect of these oppressive practices, and resulting business stoppages and migrations, on war production and essential civilian production, it was prophesied, would result in widespread unemployment and farreaching economic dislocations of a most harmful character.

The committee concluded: " The Committee is convinced by the facts which have been adduced before it that the health, morals, safety and general welfare of the People of the State of New York, as well as the safety of the Nation, and the successful prosecution of the war and essential civilian activity are menaced by the situation now prevailing in New York City with regard to rentals demanded for manufacturing and store space. It is the Committee's considered judgment that action by the State Legislature is imperative in order to avert the evils thus threatened. * * * " Accordingly, the committee recommended this emergency legislation.

At the close of the last war a similar emergency arose in connection with housing conditions in New York City and a group of statutes were enacted to meet the crisis (L. 1920, chs. 136, 942–953). The validity of these laws was considered by this court and by the Supreme Court of the United States and they were sustained as validly enacted in the exercise of the police powers of the State, notwithstanding " the impairment of the obligation of the contract of the lessees to surrender possession " of the leased premises (*People ex rel. Durham R. Corp.* v. *La Fetra,* 230 N. Y. 429; *Marcus Brown Co.* v. *Feldman,* 256 U. S. 170, 198; *Levy Leasing Co.* v. *Siegel,* 258 U. S. 242).

The principle is firmly established today that all contracts are subject to the police power of the State, and, when emergency arises and the public welfare requires modification of private contractual obligations in the public interest, the question is not whether " legislative action affects contracts incidentally, or directly or indirectly, but whether the legislation is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end " (*Home Bldg. & L. Assn.* v. *Blaisdell,* 290 U. S. 398, 438; *Matter of People [Tit. & Mtge. Guar. Co.],* 264 N. Y. 69, 83; *East New York Sav. Bank* v. *Hahn,* 293 N. Y. 622).

In the light of the emergency which called into play the police powers of the State in this case, we are unable to say that the measures taken in the public interest were unreasonable or inappropriate to curb the evils arising from the emergency and to accomplish the public purposes declared in the statute. In behalf of the appellant it is argued that the application of the statute to pre-existing leases in no wise tended to accomplish the public ends which the Legislature declared in the statute to be its purposes. This would depend of course upon the volume of unjust, unreasonable and oppressive leases imposed upon tenants before the effective date of the act. Proceeding, as we must in this case, upon the assumption that the Legislature intended the act to be retroactive, we find in the material before the Legislature ample evidence that unjust, unreasonable and oppressive leases and agreements in large volume had been exacted by landlords from tenants under the stress of prevailing conditions accelerated by the war for some

time prior to the enactment of the statute. So far as such tenants are concerned, the Legislature was justified in concluding that there was no reality of consent; that their " freedom of contract " had become an illusory concept and that their existing leases had created, and would continue to contribute to, the public emergency. Under these circumstances we may not say that the Legislature, in protecting the grave public interests involved, could not take reasonable means to prevent the enforcement of unjust, unreasonable and oppressive rentals accruing thereafter. Certainly there was nothing arbitrary or unreasonable in the remedy which the Legislature applied, providing, as it did, for arbitration or judicial determination of fair and reasonable rentals in all cases. Under the provisions of section 4 of the act the establishment of " emergency rent " at a level of 15% above rents charged on March 1, 1943, could be reviewed either upon application to the Supreme Court or upon submission to arbitration. Judicial determination of a reasonable rent was thus made available to the landlord in every case. No right to recover rents paid prior to the effective date of the act was given to the tenant. Any possible implication of such a right was expressly denied in section 11 as amended (L. 1945, ch. 315, § 2). Furthermore, the evils denounced in the statute flowed, not merely from leases which might thereafter be executed, but even more directly from leases already made, and these evils could not be remedied by regulations purely prospective in their application, although the regulations adopted were only retroactive in that they applied to future payments of rent under pre-existing leases. In the light of the emergency the act seems clearly to prescribe a most reasonable and legitimate remedy, carefully designed as appropriate to the public ends in view and the accomplishment of the legislative purpose to curb serious public evils arising from the emergency.

There was a closely parallel situation which was dealt with under the housing laws of 1920, for in those laws provision was made for reasonable compensation to the landlord during the period after the expiration of a lease when he was prevented from regaining possession notwithstanding the tenant's obligation to surrender possession at that time. (L. 1920, ch. 136, § 3, renumbered § 4 by L. 1920, ch. 944.) That provision for the

payment of reasonable compensation to a landlord who had not even consented to the lease was regarded as reasonable and appropriate to meet the demands of a situation comparable with, but not so serious as, the emergency dealt with by chapter 3 of the Laws of 1945 (*Home Bldg. & L. Assn.* v. *Blaisdell*, 290 U. S. 398, 441–442). It should be added that the remedy now prescribed is temporary, since the operation of the statute is dependent upon the continuance of the emergency and is to continue only until July 1, 1946 (L. 1945, ch. 3, § 14).

Our conclusion that the act was within the police power of the State disposes of the contention that the act violates the due process clause (U. S. Const., 14th Amendt.; N. Y. Const., art. I, § 6). Nor, in the light of the history and purpose of the act, is there any merit in the contention that it is a denial of " the equal protection of the laws " (U. S. Const., 14th Amendt.; N. Y. Const., art. I, § 11; *Marcus Brown Co.* v. *Feldman,* 256 U. S. 170, *supra*).

The judgment should be affirmed, with costs.

DYE, J. (dissenting). I disagree with the opinion of THACHER, J. The judgment upholding the constitutionality of the Commercial Rent Law should be reversed.

The retroactive provisions of section 7, chapter 3, of the Laws of 1945, being an unreasonable exercise of the police power, violate article I, section 10, of the United States Constitution.

The domestic rent laws of 1920 were construed as prospective. (*Orinoco Realty Co.* v. *Bandler,* 233 N. Y. 24.)

This statute attempts to impair the obligation of contract, legal at inception.

I accordingly vote to reverse the judgment.

LEHMAN, Ch. J., LOUGHRAN, LEWIS, CONWAY and DESMOND, JJ., concur with THACHER, J.; DYE, J., dissents in separate memorandum.

Judgment affirmed.