Louis Rothbard, Plaintiff, v. George W. Averell, Defendant.

Supreme Court, Special Term, Kings County, November 15, 1945.

*Herman S. Bachrach* for plaintiff.

*Isidore Nathanson* for defendant.

Rubenstein, J. Plaintiff seeks a judgment declaring his rights as a tenant in the premises hereinafter referred to and granting him incidental relief by way of an injunction.

Defendant is the owner of premises 159–161 Remsen Street, Brooklyn, New York, which are used for office and other business

purposes. In May, 1941, plaintiff entered into possession of the fourth floor of the afore-mentioned premises pursuant to a written lease which, after an extension, expired September 30, 1945. When the plaintiff originally entered into possession, the building was fully occupied with the exception of the third floor, but since June, 1944, the first and second floors have been idle. At the trial, defendant submitted evidence to the effect that he was unable to rent the vacant floors and that the building was being operated at a loss. Upon the basis of that testi-mony defendant asserts that he has a right to close the build-ing notwithstanding the provisions of the Business Rent Law embodied in chapter 314 of the Laws of 1945.

The issues presented here are twofold: First, is the defend-ant asserting his defense in good faith; second, assuming that the building is being operated at a loss, may the defendant close it?

After a careful consideration of all the evidence adduced, I am not satisfied at all with the defendant's claim of good faith. It seems to me that he is attempting to circumvent the provi-sions of the Business Rent Law, and his testimony that he can-not rent the first and second floors of the premises is incredible. I prefer to accept his statement that he desires to rent the entire building to one tenant and that he can do so more readily if plaintiff is excluded from possession. Nor can I accept defend-ant's plea that his age and state of health prevent him from giving care and attention to the building if it is occupied by more than one tenant, particularly so when he has admitted that he is operating another property which is occupied by several ten-ants. In the circumstances, I am of the opinion that the defend-ant's expressed wish to close the building is merely a subterfuge to gain possession and then either sell or lease the entire build-ing. It is, also, interesting to note that there is no penalty which attaches to the failure of the defendant to abide by his decision to close the building in the event he subsequently changes his mind in this respect.

The next point to be considered is, assuming that the building is being operated at a loss, may the defendant close it? The design and dominant purpose of the Business Rent Law is clear and explicit and canons of construction need not be con-sulted to aid in its interpretation. The Joint Legislative Com-mittee which investigated conditions prevailing in the renting of commercial property reported in its findings that there was a serious shortage in commercial and office space and that a

public emergency existed because of the exaction and attempted exaction by landlords of unjust, unreasonable and oppressive agreements for the payment of rent with regard to certain types of commercial property. Section 8 of the Law, which was adopted as a result, provides in part that " So long as the tenant continues to pay the rent to which the landlord is entitled * * * no tenant shall be removed from any business space, by action or proceeding to evict or to recover possession, by exclusion from possession, or otherwise * * * " unless certain conditions exist as specified in subdivisions (a) to (g) inclusive of that section. In other words, during the existence of the emergency, the landlord is restricted in the use of his property, and except upon the conditions and for the purposes enumerated in subdivisions (a) to (g) of section 8, he may not evict or remove a tenant from possession. Significantly no mention is made in any of the enumerated conditions of any right given to the landlord to close a building and thus oust a tenant, and I think it is fair to assume that had the Legislature so intended, it would have made provision for such a contingency. Nor do I think that subdivision (d) of that section which permits a landlord to recover possession " for his immediate and personal use ", may by implication be construed as granting the landlord the privilege of closing a building, for it seems to me that closing a building is the converse of using it.

It is, also, to be observed that the Commercial Rent Law, after which the Business Rent Law has been patterned, has been held to be a valid and constitutional enactment (*Twentieth Century Associates* v. *Waldman,* 294 N. Y. 571). There the court said (p. 581): " Certainly there was nothing arbitrary or unreasonable in the remedy which the Legislature applied, providing, as it did, for arbitration or judicial determination of fair and reasonable rentals in all cases. Under the provisions of section 4 of the act the establishment of ' emergency rent ' at a level of 15% above rents charged on March 1, 1943, could be reviewed either upon application to the Supreme Court or upon submission to arbitration. Judicial determination of a reasonable rent was thus made available to the landlord in every case."

As the Court of Appeals points out, the statute prescribes the means for a determination of a reasonable rent for the landlord during the emergency, and the defendant is thus enabled to receive what the Legislature has determined to be a reasonable rent for the premises involved. In the present case the plain-

tiff has offered to pay such a reasonable rent and, in my opinion, during the emergency, defendant is entitled to no more than that.

Accordingly, I grant judgment to the plaintiff as prayed for and direct that the defendant shall not discontinue the services previously rendered to the plaintiff in conjunction with his tenancy.

Submit judgment on notice.