In the Matter of COURT SQUARE BUILDING, INC., Appellant and Respondent, against CITY OF NEW YORK, Respondent and Appellant.

Argued November 17, 1948; decided January 13, 1949.

*M. Carl Levine, David Morgulas* and *Albert Foreman* for petitioner, appellant and respondent. I. The rent control act (L. 1945, ch. 314) does not apply to the City of New York. (*Kahlen* v. *State of New York*, 223 N. Y. 383; *Weitzner* v. *Stitchman*, 271 App. Div. 255, 296 N. Y. 907; *United States* v. *Petty Motor Co.*,

327 U. S. 372; *United States* v. *General Motors Corp.*, 323 U. S. 373.)  II. If such lease is subject to the emergency rent legislation, the reasonable rent formula adopted by the Appellate Division is correct.  (*Matter of Relmar Operating Corp.* [*Roffer*], 272 App. Div. 766, 297 N. Y. 609; *People ex rel. Gilmour* v. *Hyde,* 89 N. Y. 11; *Matter of New York and Brooklyn Bridge,* 72 N. Y. 527; *Matter of Fifth Madison Corp.* [*N. Y. Tel. Co.*], 272 App. Div. 766, 297 N. Y. 155; *Matter of Sirbo Holdings Inc.* [*Krapp*], 274 App. Div. 129; *Kvas, Inc.,* v. *Associated Press,* 299 U. S. 269.)  III. Two important items have been erroneously omitted in the calculation; if restored, the rent provided for by the lease need not be disturbed.

*John P. McGrath, Corporation Counsel* (*Benjamin Offner, Harry E. O'Donnell* and *Reuben Levy* of counsel), for defendant, respondent and appellant.  I. The Business Rent Control Law (L. 1945, ch. 314) is applicable to the space occupied by the city, and the provisions of that statute govern the amount of rent to which the landlord is entitled.  (*Twentieth Century Associates* v. *Waldman,* 294 N. Y. 571; *Matter of Janis Realty Co.* [*City of N. Y.*], N. Y. L. J., May 26, 1948, p. 1969; *Matter of Crown St. Garage, Inc.* [*City of N. Y.*], N. Y. L. J., April 6, 1948, p. 1265.)  II. Since the total emergency rent plus the nonrental income exceeded the gross allowable income, the landlord was not entitled to a fixation of rent in excess of the city's emergency rent.  (*Matter of Fifth Madison Corp.* [*N. Y. Tel. Co.*], 272 App. Div. 766; *Schack* v. *Handel,* 271 App. Div. 1; *Matter of Michel* [*Lerner*], 185 Misc. 876; *Matter of Frankel* [*Hatters' Oakhide Boxes*], 269 App. Div. 531; *Matter of Zellner* [*Brooklyn Trust Co.*], 70 N. Y. S. 2d 114, 273 App. Div. 906.)  III. The rent to be paid by the city, as fixed by the Appellate Division, was based on an erroneous computation, and exceeds the fair and reasonable proportion of the gross rentals.  The trial court's finding that the city's emergency rent is fair and reasonable is in accord with the weight of evidence.  (*Matter of Fifth Madison Corp.* [*N. Y. Tel. Co.*], 297 N. Y. 155; *Harrington* v. *Harrington,* 290 N. Y. 126; *Pirman* v. *Confer,* 273 N. Y. 357; *York Mtge. Corp.* v. *Clotar Constr. Corp.,* 254 N. Y. 128.)

LEWIS, J.  The petitioner-landlord is the owner of an office building in the city of New York occupying the greater por-

tion of a city square bounded by Lafayette, Reade, Elm and Duane Streets. The City of New York, as a tenant, occupies six floors of the petitioner's building — the second to seventh floors inclusive — and in addition a ground-floor store on Reade Street and space in the basement. This extensive space has been used since 1935, for courtrooms and related uses by the Municipal Court of the City of New York. In January, 1943, the parties entered into a lease to run until April 30, 1945, at an annual rent of $123,300. On October 31, 1944, a renewal lease was executed for a three-year period commencing May 1, 1945, at an annual rent of $163,850.

After execution of the lease last mentioned above, but prior to the commencement of the city's tenancy thereunder, the Business Rent Control Law (L. 1945, ch. 314) was enacted and became effective. By the terms of that statute rents for business properties were frozen at the rent paid on June 1, 1944, plus 15%. In those circumstances, on May 1, 1945, the city — claiming to be protected by the Business Rent Control Law — refused to pay the rent reserved in the lease executed October 31, 1944, on the ground that the emergency rent fixed by the statutory formula prescribed by chapter 314 of the Laws of 1945 was applicable. According to that formula the statutory emergency rent per year — computed on the basis of the annual rent paid by the city on June 1, 1944 ($123,300) plus 15% — amounted to $141,795.

By its petition in this proceeding, Court Square Building, Inc., the landlord, seeks a determination that the Business Rent Control Law (L. 1945, ch. 314) does not apply to the City of New York as a tenant and that the city is obligated to pay the rent specified in the lease executed October 31, 1944. In the event the Business Rent Control Law is held to be applicable, the petitioner asks that the emergency rent provided by that statute be held inadequate and that the reasonable rent be fixed at the figure provided in the lease of October, 1944.

At Special Term, the Business Rent Control Law was held to be applicable to the city's tenancy and the landlord's petition for a greater rent than the emergency rent was dismissed —

the ruling being that the emergency rent was a fair rent for the space occupied by the city.

At the Appellate Division, it was also ruled that the Business Rent Control Law was applicable to the city's tenancy. The Appellate Division found, however, that the plaintiff-landlord was entitled to rent in excess of the emergency rent and fixed an annual rent greater than that provided by the Special Term order. From the order of the Appellate Division both the landlord-petitioner and the tenant-respondent appeal to this court.

The landlord's first contention upon this appeal is that the Business Rent Control Law does not apply to the City of New York as a tenant. In support of that position it is argued that, inasmuch as a lease was executed prior to the effective date of the statute (March 28, 1945), the rent control law cannot be held applicable for it would then constitute a violation of the constitutional prohibition against impairing the obligation of a contract. The same argument was advanced in *Twentieth Century Associates* v. *Waldman* (294 N. Y. 571) where this court considered the constitutionality of the Commercial Rent Control Law (L. 1945, ch. 3). The statute there involved differed from the statute now before us in that it covered different types of property, had a different effective date and a different date for the freezing of rents. In other respects the Commercial Rent Control Law and the Business Rent Control Law are alike. In the *Twentieth Century Associates* case (*supra*) the Commercial Rent Control Law was held to be a constitutional exercise of the police power and the statute there being considered was held to be applicable to leases executed prior to its effective date. We regard the rule of that case as decisive of the challenge upon this appeal by the petitioner-landlord to the constitutional validity of the Business Rent Control Law. In that connection we note that the enactment of the statute last mentioned was prompted by the same emergency — arising from the prevalence of the same conditions affecting public welfare — that caused the enactment of the Commercial Rent Control Law (compare L. 1945, ch. 314, § 1, with L. 1945, ch. 3, § 1).

The petitioner-landlord also claims that because the city

possesses the power of eminent domain, it does not need, and should not be allowed, the protection of the Business Rent Control Law. We find nothing in the statute which indicates that it applies only to certain types of tenants — excluding those, such as cities, which have the right of eminent domain. Indeed, under subdivision (g) of section 8 *id.* — which defines the circumstances in which tenants may be evicted thereunder — it is provided: " In no event, however, shall any tenant be evicted under or pursuant to the provisions of this subdivision  *  *  * who is  *  *  *  an agency of the federal government, the state, the city, or any county ". It would thus seem that the need for specifically excluding " an agency of  *  *  * the city ", when reference is made to the rights under this section of " any tenant ", is an indication that the Legislature, in referring repeatedly to tenants throughout the statute, intended to include municipalities. Accordingly, we are in agreement with Special Term and the Appellate Division that the provisions of the Business Rent Control Law are constitutional and applicable to the city's tenancy here involved.

We come then to the landlord's contention that, if it be held that the city's tenancy is subject to the provisions of the emergency rent legislation, then the reasonable rent for the space occupied by the city should be fixed at $163,850. Opposed to this contention the city asserts that the emergency rent — fixed according to the statutory formula — was a fair and reasonable rent for the premises here involved and, therefore, the landlord is not entitled to rent in excess of this amount. The formula by which the courts are to determine whether a landlord is entitled to more than the statutory emergency rent is set forth in section 4 of chapter 314 of the Laws of 1945, as follows:

" § 4. A rent, exceeding in amount the emergency rent, may within the limitations specified by this section, be fixed by arbitration or by the supreme court. The rent to be so fixed shall be a reasonable rent based on the fair rental value of the tenant's business space as of the date the application to the supreme court or submission to arbitration is made. In the determination of the amount of such reasonable rent: (a) due consideration shall be given to the cost of maintenance and operation of the entire property (including land and building

in which such business space is located) including amount paid for taxes assessed against such property, and to the kind, quality and quantity of services furnished, but excluding amortization or interest paid or accrued on any incumbrances thereon; (b) such rent shall be fixed in° such manner that it shall not exceed a fair and reasonable proportion of the gross rentals from all the business space in the entire building, giving due consideration to the amount and character of the business space used or occupied by such tenant, provided, however, that the gross rentals from all such business space shall not exceed a fair and reasonable proportion of the gross rentals from the entire building.

" A net annual return of six per centum on the fair value of the entire property including the land plus two per centum of principal for amortization of any mortgages thereon shall be presumed to be a reasonable return.''

Using the statutory formula quoted above Special Term and the Appellate Division both found — and there is no objection by either party to the finding — that the fair and reasonable income which the landlord was entitled to receive from its land and building was $547,935.40.*

Special Term and the Appellate Division differed, however, in the method by which gross income from the property should be computed. Special Term concluded that the landlord's gross income from the property was $561,382.38 — consisting of rents from the building of $520,729.38 and additional nonrental income of $40,653 from sale of electricity, waste materials, etc. Inasmuch as the gross income found by Special Term exceeded $547,935.40 — which figure both parties agree is the fair and reasonable income to which the landlord is entitled — Special

---

\* The figures used in reaching this amount were as follows:

Fair value of property —

$3,000,000.00 x 6% = $180,000.00   (Net profit to which landlord is entitled.)

Principal sum due on mtges.—

$2,864,269.87 x 2% = 57,285.39   (Statutory allowance for amortization.)

Costs of operation = 310,650.01

$547,935.40   (Fair and reasonable income to which landlord is entitled.)

Term declined to fix the city's rent in excess of its statutory emergency rent of $141,795 per year (the rent paid by the city on June 1, 1944 [$123,300], plus 15%).

At the Appellate Division the landlord's gross income from the property, including $40,653 received from nonrental income, was found to be $510,000. This amount, being less than $547,935.40, the Appellate Division proceeded to compute the rent for the city which would represent its proportionate share of the total rents to which the landlord is entitled in order to net a fair return on its property. The city's rent as fixed by the Appellate Division was $155,265.72 per year.

The difference in gross income as found by Special Term and the Appellate Division is brought about in this manner: At the time when this proceeding was commenced, the rent actually being paid by all tenants other than the city, amounted to $319,473.16 per year. Those tenants — other than the city — who were occupying space on June 1, 1944, under long-term leases which had not expired, were not subject to payment of emergency rent or to proceedings for fixation of reasonable rent under the statute. In determining gross income from the premises, Special Term added 15% to the actual income being paid by tenants in the building — other than the city — " for the purpose of ascertaining the emergency or statutory rent of the building." The Appellate Division held that the landlord's gross income must be determined from the actual rent obtained and not from a theoretical emergency rent to which some of the tenants were not subject. Its opinion stated: " Under the circumstances it would seem that the trial court fell into error in this step of its calculation. The statute seems to contemplate that the amount of gross rentals be determined in relation to the actual income obtainable from the building at the time of application to the Supreme Court for an increase in rent (L. 1945, ch. 314, § 4). It appears, however, that the landlord could not actually obtain any increase of 15% as emergency rent from the tenants other than the respondent occupying space in the premises (L. 1945, ch. 314, § 5)." (273 App. Div. 441, 444.)

We agree with the ruling by the Appellate Division that the Legislature intended a determination of whether a landlord is receiving a fair return on its investment to be based on the

*actual* rents he was receiving from the premises at the time the proceeding was commenced rather than on emergency rental figures — especially, as in this case, where such emergency rents were not applicable to some of the tenancies involved. Our conclusion in that regard is reinforced by the provision of the act which requires a landlord to submit a bill of particulars setting forth the following items for use in determining what a reasonable rent shall be (L. 1945, ch. 314, § 4): ''. In any proceeding * * * under this section, the landlord * * * shall serve upon the tenant a verified bill of particulars, setting forth the *gross income derived from the entire building during the preceding year,* the names and addresses of all tenants, the *rental charged each tenant and how payable,* * * * the assessed valuation of the property as shown by the latest completed assessment-roll of the city, * * * the cost of maintenance and operation of the building during the preceding year, the kind, quality and quantity of services furnished during such year; and such other facts as the landlord claims affect *the net income of the entire building,* or the reasonableness of the rent to be charged.'' (Emphasis supplied.)

The above excerpt from the statute, referring as it does to '' gross income derived from the entire building during the *preceding* year '' and to '' the rental charged each tenant '', is a strong indication that the Legislature intended a landlord's fair return to be computed on the basis of *actual* income and not the rent which would have been derived if emergency rents had been applied to each tenancy. (*Matter of Relmar Operating Corp. [Roffer]*, 297 N. Y. 609.)

The decision of this court in *Matter of Fifth Madison Corp.* (*New York Tel. Co.*) (297 N. Y. 155) does not support the city's assertion in the present case that a landlord's gross income must be based on the total emergency rents from the premises rather than on the actual rents received. The record in *Matter of Fifth Madison Corp.* (*New York Tel. Co.*) (*supra*) does not indicate that a question as to the method of computing gross income in this respect was considered by this court. No objection was made by either party to that proceeding as to the method employed by the trial court on that phase of its calculations — the objection chiefly stressed being disallowance of an item of depreciation. However, the point was argued before this court in *Matter of*

*Hecht Broadway Corp. (Ashenfarb)* (298 N. Y. 769), where it was not passed upon inasmuch as there was evidence that both the actual rents and the emergency rents exceeded the amount required to give the landlord a fair return on its investment.

Having determined that the gross income — computed on the basis of actual rents received from the premises — was inadequate to provide the landlord with a fair return on its investment, it became necessary for the Appellate Division to fix the annual rent payable for the business space occupied by the city. When a court is called upon to fix a reasonable rent under chapter 314 of the Laws of 1945, that statute (§ 4) requires that " due consideration [shall be given] to the amount and character of the business space used or occupied by such tenant " in its relation to the remaining rentable space in the building. The city, in the present case, does not dispute the finding by the Appellate Division that, considering the amount and character of the space rented by the landlord to the city, the space occupied by the city amounts to 28.3% of the business space in the entire building. Accepting 28.3% as the portion of the business space occupied by the city we conclude that the Appellate Division erroneously took 28.3% of $547,935.40 — the latter figure being the gross annual receipts from the property to which the landlord is entitled and includes two sources of income: *rents* received for business space and *nonrental* income such as the sale of electricity, waste materials, etc. Inasmuch as the landlord receives annually nonrental income of $40,653, it is entitled to receive as gross annual *rentals* only $507,282.40 (*Matter of Fifth Madison Corp. [New York Tel. Co.], supra*).

Accordingly, under the applicable statutory provision (L. 1945, ch. 314, § 4, subd. [b]), the " * * * proportion of the gross *rentals* from all the business space in the entire building * * * " payable annually by the city for the business space it occupies is 28.3% of $507,282.40 or $143,560.92.

The order of the Appellate Division should be modified in accordance with this opinion and, as so modified, affirmed, without costs.

Loughran, Ch. J., Conway, Desmond, Dye and Fuld, JJ., concur.

Ordered accordingly.