Burke, J.
(dissenting). The Business Bent Law (L. 1945, ch. 314, as amd. by L. 1955, ch. 701) is unconstitutional and violates the Constitution of the State of New York and the Constitution *421 of the United States. The record before this court shows that there is no reasonable basis for a legislative finding that the situation as to office space is of an emergency nature threatening the health, safety or general welfare of the people of this State. The constitutionality of rent control laws ‘ ‘ rest [s] on the basis of the requirements of a great emergency ’ ’ (Orinoco Realty Co. v. Bandler, 233 N. Y. 24, 29). The evidence must demonstrate that the basic facts necessary to validate a statute exist (Defiance Milk Products Co. v. Du Mond, 309 N. Y. 537; East New York Sav. Bank v. Hahn, 293 N. Y. 622, affd. 326 U. S. 230). Although a legislative enactment carries with it a presumption of constitutionality (United States v. Carolene Products Co., 304 U. S. 144), such presumption is rebuttable.
In the case before this court the landlord has established the absence of any emergency conditions relative to office space by clear and convincing evidence. None of the conditions present when this court sustained the constitutionality of the Business Rent Law (Matter of Court Square Bldg. v. City of New York, 298 N. Y. 380) obtain now. At that time grave emergency conditions threatened employment, essential civilian production and tended to create inflation. At the end of World War II, there was about 100,000,000 square feet of office space in existence in the city of New York. Since 1947,14,000,000 square feet of office space has been constructed and is available for occupancy. The foregoing figures relate only to office space that is leased out to tenants. The space in the new buildings is not subject to controls. There are, in addition, office and specialty buildings that have been built and occupied solely by the owners of the buildings. Such space amounts to 2,000,000 square feet. The occupants of the owner-occupied buildings are not competing with the tenants of new or older buildings for space. The addition of the new office space lias had the effect of attracting the tenants from the older buildings to the new buildings. As a result of fluidity of tenant movement, the owners of the spaces thus vacated have had to employ brokers to find tenants for the vacated space, canvassing potential tenants and entering into negotiations which included rent concessions, alterations and improvements, all directed toward the prompt re-renting of the vacated space. These facts show that there is no shortage of space and that a competitive market for space does exist. Even if a shortage of space did exist, such a condition would not, by *422 itself, under any of the authorities, amount to an emergency serious enough to justify the invocation of the police power. The small vacancy ratio in office buildings is due beyond any reasonable doubt to the general improvement in the economy of the country at large. The space on the market when measured against the demand is adequate. It is not necessary to establish that every tenant can find space at the price he is able to pay, or that there is ample space in certain limited geographical areas of the city, in order to support a declaration of the end of the emergency.
The evidence of general prosperity is not a sufficient basis for a Legislature to single out one industry for the imposition of controls when all other industries, business and professions using its facilities are profiting by the prosperity. There is no evidence of an uncontrolled inflation which has been forced on the economy by reason of a circumstance beyond the powers of our economic system. The legislative choice is without rational basis (South Carolina Highway Dept. v. Barnwell Bros., 303 U. S. 177, 191, 192) when tested by the Legislature’s own formula that the legislation is designed to protect and promote the public health, safety and general welfare and to prevent inflation. Price control of one industry is discriminatory, confiscatory and a denial of equal protection of the law, when national policy for the past ten years has been to achieve prosperity by full employment, plant expansion, increased production and a general building boom with the approval of business, labor and other groups of our society. Such premeditated inflation obviously cannot be prevented or curtailed by the control of the rentals of a small percentage of office space in the State of New York. The known state of facts is not debatable and does not support the legislative decision.
The conviction of the legislators that there is a grave emergency without more, is insufficient to warrant a legislative resort to the police power. When the conviction rests on a theory of an emergency that does not measure up to the standards set by the Supreme Court (Levy Leasing Co. v. Siegel, 258 U. S. 242, 245), the statute enacted to exercise the police power is without the constitutional limits.
The extensions of the Business Bent Law in 1955 and 1956 neither afford the law immunity from attack nor endow it with validity or justification. In Municipal Gas Co. v. Public Service *423 Comm. (225 N. Y. 89, 95-96), Judge Cardoxo said: “ But the argument is that the statute is either valid or invalid at the moment of its making, and from that premise the conclusion is supposed to follow that there is a remedy for present confiscation, but none for confiscation that results from changed conditions.” He concluded “ The prediction must square with the facts, or be cast aside as worthless (Ex parte Young, 209 U. S. 123, 147, 148). It must square with them in one year as in another, at the beginning but equally at the end ”.
Whatever stringency exists at the present time as a consequence of business competition for space in the most desirable locations, is of different origin and identity from the war emergency in 1945. It is not the emergency which is recited in the preamble of this act.
The proof showing that new buildings are being constructed is not evidence of a shortage of space, but rather a desire on the part of tenants for new as well as luxurious offices. It reflects the trend in the general economy toward expansion dictated by pride in prestige, which many believe large opulent offices signalize. It is not symptomatic of necessity. Bargaining between landlords and tenants is real and not illusory. Such conditions do not warrant the interposition of the authority of the State in behalf of a particular class, as the interests of the public generally are not affected. The legislative restriction does not rest upon any reasonable base but, on the contrary, is arbitrary and unduly oppressive. The testimony as a whole establishes the absence of any emergency conditions which constitute a threat to the safety, health or welfare of the people of the State. The burden of proof required has been met. The appellant has demonstrated that the emergency police power legislation offends the well-established and ever-defended concepts of our governmental system. The presumption of constitutionality cannot be sustained by a finding of a fictitious emergency. Accordingly, the orders below should be reversed.
Conway, Ch. J., Desmond, Dye and Fttld, JJ., concur with Froessel, J.; Burke, J., dissents in an opinion in which Van Voorhis, J., concurs.
In each proceeding: Order affirmed.