Maxwell Shapiro, J.
This is a summary proceeding wherein the landlord seeks to recover possession of an office occupied by the tenant alleging that the said tenant holds over after the expiration of his term. The landlord does not allege any statutory grounds for the removal of the tenant and concededly the tenant is protected by the Business Bent Law (L. 1945, ch. 314, as amd. by L. 1959, ch. 809, § 4).
The landlord challenges the constitutionality of this emergency legislation arguing that said law violates the due process and ■equal protection clauses of the Fourteenth Amendment of the United States Constitution and our own constitutional provisions prohibiting tb@ taking of private property without just
*501 compensation (N. Y. Const., art. I, § 7), and contending that the emergency originally justifying the law has now come to an end.
The Attorney-General has appeared in this proceeding pursuant to section 71 of the Executive Law in support of the constitutionality of the legislation under attack.
There have been several prior attacks upon the constitutionality of the Business Rent Law. Its constitutionality has been upheld in Matter of Court Square Bldg. v. City of New York (298 N. Y. 380) and Lincoln Bldg. Associates v. Barr (1 N Y 2d 413).
The applicable law is abundantly clear and was restated when an almost identical attack was made in Lincoln Bldg. Associates v. Barr (supra) in which the same parties were involved. There have been innumerable cases which have outlined the principles by which the constitutionality of a statute resting on the police powers may be tested. The Court of Appeals, in a decision involving the very statutes herein (Lincoln Associates v. Barr, supra, p. 415) has made the following statement with respect to the rules governing the scope and extent of judicial review: “ A legislative enactment carries with it a strong presumption of constitutionality, i.e., it is presumed to be supported by facts known to the Legislature. * # * This presumption, however, is not irrebuttable * * * and courts may scrutinize the basis of legislative enactments predicated upon the existence of a particular state of facts * * *; but they may not be concerned with questions as to the ‘ reasonableness, wisdom and propriety ’ * * *, expediency * * * or ‘ desirability ’ thereof”. (Citing numerous cases. Emphasis supplied.)
Quoting from the Supreme Court of the United States in Old Dearborn Co. v. Seagram Corp. (299 U. S. 183, 196) the court, in the Barr case, said at page 415: “ Where the question of what the facts establish is a fairly-debatable one, we accept and carry into effect the opinion of the legislature.”
The court further stated (p. 415): “ Nor may courts substitute their judgment for that of the Legislature so long as there can be discovered ‘ any state of facts either known or which could reasonably be assumed ’ to afford support for the legislative decision to act. (United States v. Carolene Products Co., supra, p. 154.) [Citing cases.] ”
At another point in its opinion (supra, pp. 417-418) the court stated the issue there involved and applicable to the case at bar: “ The question thus posed is whether there existed in 1955 a reasonable basis for findings justifying continuance of rent *502 controls upon office space. In other words, was the legislative choice without hasisf (South Carolina State Highway Dept. v. Barnwell Bros., 303 U. S. 177, 191-192, supra. [Emphasis supplied] ”.)
The presumption of constitutionality may be rebutted and the courts may review the basis of legislative amendments predicated upon the existence of a particular state of facts. (Defiance Milk Prods. Co. v. Du Mond, 309 N. Y. 537; United States v. Carolene Prods. Co., supra.)
In this proceeding the landlord has contended that since the proceeding in 1955 conditions have changed and that the reasons for this emergency rent control legislation, as they relate to office space, no longer exist. The entire line of testimony offered by the landlord endeavored to show that conditions from 1955 to date have changed to such an extent that today there is a free market in office space; that office tenants can readily find suitable quarters and bargaining with landlords is no longer an illusory concept. The petitioner offered testimony with respect to some 52 office building in the City of New York out of approximately 1,100 buildings, contending that they were a representative sampling of prevailing conditions and that they indicate such fluidity and freedom of movement that there can no longer be a justification for this rent control legislation.
During the course of the trial it appeared that many of the buildings with respect to which the landlord offered testimony were the subject of inquiry in the earlier litigation and inevitably eomparisions were drawn between conditions in those buildings in 1955 and in 1959. The variations in existing rental conditions in those particular buildings were slight. The landlord also offered testimony with respect to existing new buildings which were only in the planning stage in 1955. It appears that the new construction added approximately 15,000,000 square feet to the rental market, substantially all of which was rented by the time the buildings were completed. Despite that fact, the vacancy ratio in Manhattan in 1959 stood at 2.6% whereas in 1955 the ratio of vacancies was 1.2%. This can hardly be termed such a sharp rise as would indicate a change in conditions, sufficient to override the legislation unanimously enacted.
It should be noted that the statute under attack is not the same as the legislation in effect in 1955. A study of the legislative reports indicates that the Temporary State Commission on Rents and Rental Conditions embarked on a program of amending the legislation with a view toward gradual but ulti *503 mate decontrol. Thereafter and in each year commencing with the 1956 extension of the act, amendments were inserted permitting landlords to decontrol space by the simple expedient of offering two-year leases to statutory tenants, upon the expiration of which time the space occupied by such tenants would be decontrolled. If the tenant refused or failed to sign such lease his space became decontrolled Within six months. The first step in 1956 was directed against tenants occupying space renting for $20,000 per annum or higher (L. 1956, ch. 735); in 1957 the Legislature reduced this amount to $10,000 (L. 1957, ch. 452); in 1958 the rent involved was reduced to $7,500 (L. 1958, ch. 886) and in 1959 it was further reduced to $5,000 per year (L. 1959, ch. 808). The legislation has always been passed unanimously by the Legislature. At the present time the only business space which is rigidly controlled is that renting for less than $5,000 per annum. In some instances even this Space may be recaptured by expanding tenants (Business Bent Law, § 8, subd. [kk]; L. 1945, ch. 314, as amd.).
The landlord throughout this proceeding appeared oblivious to the changes in the law since the earlier litigation and at no time offered any testimony specifically directed to this phase of the statute. It may be safely assumed that with rentals of $5,000 per year and less, the office space involved would customarily be 1,500 square feet or less. A study of the exhibits and vacancy charts offered by the landlord indicates Very few units of that size. The landlord in support of its argument pointed out the large number of controlled tenants as contrasted with the purely statutory tenants and pointed out in numerous instances that leases were made for long terms. It would appear, therefore, that the amendments to the foregoing statute were highly effective and resulted in landlord and tenant arranging for long-term leases when the tenants were faced with complete decontrol upon being tendered a two-year lease. Bor practical purposes such tenants are not the beneficiaries of the rent control legislation.
There has been a dearth of testimony with respect to the limited areas of office space which are fully controlled. It should also be noted that the Legislature substantially increased the emergency rent so that at the present time it is fixed at 50% above the June, 1944 rent. Certainly it cannot be said that legislation in this field has been static. It cannot be contended that the law is the same in all respects as it Was in 1955 and that no effort has been made to meet changing conditions. Each and every year since 1955 important amendments were added relaxing controls.
*504 It should also be recognized that as part of our economy in the Borough of Manhattan various fixed areas are noted for the types of business which operate therein. The exhibits plainly indicate that in the better known and more desirable office buildings there are virtually no vacancies and the percentage of controlled tenants is very high. It is obvious also that the number of office tenants who occupy space with a rental of $5,000 or less is quite substantial.
The landlord offered testimony by relators who expressed the opinion that there was no longer any emergency in office space and no justification for rent control legislation. On cross-examination the Attorney-General produced opinions by leading realtors as expressed in magazine and newspaper articles, evidencing a tight rental market. These opinions conflicted sharply with the opinions expressed by landlord’s witnesses. Even in this area of expert opinion, the most that can be said from landlord’s viewpoint is that a debatable question is presented. It is elementary that where the issues are debatable the court must carry into effect the opinion of the Legislature. (Old Dearborn v. Seagram Corp., 299 U. S. 183, 196, supra; Lincoln Bldg. Associates v. Barr, 1 N Y 2d 413, supra.)
The landlord’s burden of proof indeed is heavy, as it should be when constitutionality is at issue.
In Defiance Milk Prods. Co. v. Du Mond (309 N. Y. 537, supra) the Court of Appeals used the following language with respect to the ‘ ‘ strong presumption of constitutionality ’ ’ and the judicial review thereof (p. 541): “ Questions as to wisdom, need or appropriateness are for the Legislature * * * Courts strike down statutes only as a last resort * * * and only when unconstitutionality is shown beyond a reasonable doubt (Citing cases. Emphasis added.)
It seems to the court that the issue is essentially a simple one: Can it be said that the present statute in its modified form has no basis in fact and that its enactment was purely an arbitrary and capricious act on the part of the lawmakers? Can it be said that the Legislature acted literally without rhyme or reason in extending this emergency legislation in its modified form? Can it be said that there was no state of facts either known or which could reasonably be assumed to support this legislation? The answer to these questions must clearly be in the negative.
Since the decision by the Court of Appeals in Lincoln Bldg. Associates v. Barr (supra) a determination was made supporting residential rent control legislation as it related to hotels. *505 In Matter of Hotel Assn. of N. Y. v. Weaver (3 N Y 2d 206) wherein the court stated as follows (p. 216): “ In our
judgment, a demonstration that in 80 hotels, representing only about 53% of all hotel rooms in New York City, there is a 17.21% vacancy rate hardly approaches the type of evidence necessary to strike down the statute. Nor is the fact that on one particular day 61 hotels advertised for tenants of any avail. Even if the percentage of vacancy claimed existed in 100% of New York City hotels, it would still fall short of the proof required. It is my recollection that it was observed on oral argument that vacancy rates approximating 17% were not uncommon even during World War II, and appellants do not attempt to contend that there was no emergency at that time. The bare 17.21% figure, taken without relation to any other circumstances, unsupported by any other substantial facts, and being a product of a survey of merely about 53% of hotel accommodations, can hardly be adequate to rebut the presumption referred to above, or to successfully disprove the express and recent declaration of an informed Legislature. ’ ’
As to the landlord’s contention that the commission has not made detailed surveys or taken extensive testimony before re-enacting the present legislation, a contention similarly urged without success in the Barr case, it need only be pointed out that the Supreme Court in Carmichael v. Southern Coal & Coke Co. (301 U. S. 495, 510) said: “A state legislature, in the enactment of laws has the widest possible latitude within the limits of the Constitution. In the nature of the case it cannot record a complete catalogue of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function.”
That the Legislature has carefully reviewed this problem each year before extending the law is clearly apparent by the amendments enacted each and every year. These amendments plainly indicate a desire to end this emergency legislation gradually and without disrupting the economy of our State. In view of the foregoing facts this court must uphold the constitutionality of the existing law.
Final order awarded in favor of the tenant dismissing the petition on the merits.