EAST NEW YORK SAVINGS BANK, Appellant, *v.* ALVIN HAHN et al., Respondents, et al., Defendants.

Argued November 27, 1944; decided December 30, 1944.

*John P. McGrath, Charles H. Heinlein* and *John J. Buckley* for appellant. I. Moratorium legislation violates the contract clause of the Federal Constitution and will not be sustained by the courts unless it is justified by a serious emergency, temporary in character, requiring the invocation of this drastic remedy for the general welfare of all the people. (*First Trust Joint Stock Land Bank of Chicago* v. *Arp,* 283 N. W. 441; *Jefferson Standard Life Ins. Co.* v. *Noble,* 188 So. 289; *Pouquette* v. *O'Brien,* 100 P. 2d 979; *First Trust Co.* v. *Smith,* 277 N. W. 762; *Farm Mortgage Holding Co.* v. *Miller,* 57 P. 2d 35; *Travelers Ins. Co.* v. *Marshall,* 76 S. W. 2d 1007; *Kaelin* v. *Michelson,* 176 Misc. 536; *Attala County* v. *Mississippi Tractor and Equipment Co.,* 162 Misc. 564; *Klinke* v. *Samuels,* 264 N. Y. 144; *Home Bldg. & L. Assn.* v. *Blaisdell,* 290 U. S. 398; *Chastleton Corp.* v. *Sinclair,* 264 U. S. 543.) II. The court may take judicial notice of the fact that the emergency is at an end. (*Jefferson Standard Life Ins. Co.* v. *Noble,* 188 So. 289; *Pouquette* v. *O'Brien,* 100 P. 979; *First Trust Joint Stock Land Bank of Chicago* v. *Arp,* 283 N. W. 441; *Chastleton Corp.* v. *Sinclair,* 264 U. S. 543.)

*George R. Fearon* for Savings Banks Association of the State of New York, *amicus curiæ,* in support of appellant's position. I. If the emergency is past, then the statute is unconstitutional and the foreclosure action may proceed to judgment. (*Klinke* v. *Samuels,* 264 N. Y. 144.) II. Whether the emergency still exists upon which depends the continued operation of a law designed to relieve the economic emergency, is always open to judicial inquiry. (*Home Bldg. & L. Assn.* v. *Blaisdell,* 290 U. S. 398.) III. The declaration of the Legislature as to the existence of an emergency is entitled to great respect, but it is not conclusive, and a law depending upon the existence of an emergency or other certain state of facts to uphold it may cease to operate if the emergency ceases. (*Chastleton Corp.* v. *Sinclair,* 264 U. S. 543.) IV. The court should take judicial notice of the facts relating to economic conditions from January 1, 1933, to the present time. (Civ. Prac. Act, § 334-a; *Jefferson Standard Life Ins. Co.* v. *Noble,*

185 Miss. 360; *Pouquette* v. *O'Brien,* 55 Ariz. 248; *First Trust Joint Stock Land Bank* v. *Arp,* 225 Iowa 1331; *First Trust Company of Lincoln* v. *Smith,* 134 Neb. 84; *Farm Mortgage Holding Co.* v. *Miller,* 57 P. 2d 35; *Travelers Ins. Co.* v. *Marshall,* 76 S. W. 2d 1007; *Home Owners Corporation of Washington, D. C.* v. *Oleson,* 3 N. W. 2d 880.)

No appearance for respondents.

*Nathaniel L. Goldstein, Attorney-General (Orrin G. Judd* and *Herbert A. Einhorn* of counsel), appearing pursuant to section 68 of the Executive Law. I. The legislative finding embodied in section 1 of chapter 93 of the Laws of 1943 was not arbitrary, unreasonable or without foundation in fact. (*Noyes* v. *Erie & Wyoming Farmers Co-op. Corp.,* 281 N. Y. 187; *Maguire & Co.* v. *Lent & Lent,* 277 N. Y. 694; *Szold* v. *Outlet Embroidery Supply Co.,* 274 N. Y. 271; *Biddles, Inc.,* v. *Enright,* 239 N. Y. 354; *People ex rel. Bryant* v. *Zimmerman,* 241 N. Y. 405.) II. Appellant failed to establish beyond a reasonable doubt the unconstitutionality of chapter 93 of the Laws of 1943. (*Matter of Buoneto* v. *Buoneto,* 278 N. Y. 284; *Atkins* v. *Hertz Drivurself Stations, Inc.,* 237 App. Div. 31, 261 N. Y. 352, 291 U. S. 641; *Matter of Fay,* 291 N. Y. 198; *Magurie & Co.* v. *Lent & Lent,* 277 N. Y. 694; *People ex rel. Cotte* v. *Gilbert,* 226 N. Y. 103; *People* v. *Nebbia,* 262 N. Y. 259; *Johnson* v. *City of New York,* 274 N. Y. 411; *Gardner* v. *Ginther,* 232 App. Div. 296, 257 N. Y. 578.) III. The wisdom of the enactment of chapter 93 of the Laws of 1943 is not a matter for judicial inquiry. (*Fearon* v. *Treanor,* 272 N. Y. 268, 301 U. S. 667; *Chamberlin, Inc.,* v. *Andrews,* 271 N. Y. 1; *Pollock* v. *Farmers' Loan and Trust Co.,* 157 U. S. 429; *People ex rel. Bryant* v. *Zimmerman,* 241 N. Y. 405; *Standard Oil Co.* v. *Marysville,* 279 U. S. 582.)

*I. Nathanson, George A. Roland* and *Seymour C. Simon* for Slocum Realty Corporation, *amicus curiæ.* Plaintiff has failed to sustain the burden of proof as against (1) the legislative finding that conditions exist which warrant the continuance of mortgage protection, and (2) the presumption of constitutionality. (*National Bank of Aitken* v. *Showell,* 195 Minn. 273; *Albert* v. *Milk Control Board,* 200 N. E. 688; *Chastleton Corp.* v. *Sinclair,* 264 U. S. 543; *People* v. *Nebbia,* 262 N. Y.

259; *Wright* v. *Vinton Branch,* 57 Sup. Ct. 556; *State* v. *Newark Milk Co.,* 118 N. J. Eq. 504; *Rohrer* v. *Milk Control Board,* 186 A. 336; *German Alliance Ins. Co.* v. *Kansas,* 233 U. S. 389; *Home Bldg. & L. Assn.* v. *Blaisdell,* 290 U. S. 398; *Mutual Bldg. & L. Assn.* v. *Moore,* 232 Ala. 488.)

LEHMAN, Ch. J. The legislative declaration in chapter 793 of the Laws of 1933 that " a serious public emergency, affecting and threatening the welfare, comfort and safety of the people of the state and resulting from the abnormal disruption in economic and financial processes, the abnormal credit and currency situation in the state and nation, the abnormal deflation of real property values and the curtailment of incomes by unemployment and other adverse conditions, exists " did not " create " a legislative power to suspend or change the legal remedies of holders of bonds and mortgages. The existence of conditions " affecting and threatening the welfare, comfort and safety of the people of the state " may, however, furnish the occasion for the exercise of such power. (*Home Bldg. & L. Assn.* v. *Blaisdell,* 250 U. S. 398; *Matter of People* [*Tit. & Mtge. Guar. Co.*], 264 N. Y. 69, 94.) Concededly the existence of extraordinary conditions in 1933 as set forth in this legislative declaration and as confirmed by common knowledge, justified the extraordinary remedy that till July 1, 1934, no action should be brought to foreclose a mortgage for a default in the payment of principal. (*Klinke* v. *Samuels,* 264 N. Y. 144.) Each year thereafter the Legislature on similar findings decreed that the remedy provided in 1933 should remain in force for another year.

In 1943 the Legislature again declared that " The serious public emergency which existed at the time of the enactment of * * * chapter seven hundred and ninety-three of the laws of nineteen hundred thirty-three * * * having continued, in the judgment of the Legislature, to the present time and still existing, the provisions of such chapters seven hundred and ninety-three of the laws of nineteen hundred thirty-three * * * shall * * * remain and be in full force and effect until July first, nineteen hundred forty-four * * *." (L. 1943, ch. 93.) The Legislature at the same time provided that an owner of mortgaged premises should not be entitled to claim

the benefit of the suspension of the right to foreclose the mortgage unless he amortized the principal at the rate of one per cent per annum. The plaintiff challenges the finding of the Legislature that the " serious public emergency " which existed in 1933 still existed in 1943, and urges that the exercise of the power of the Legislature to provide an extraordinary remedy for extraordinary conditions which was justified in 1933 may not be invoked in 1943 when the abnormal conditions of an earlier time have disappeared.

The Legislature has the responsibility of determining when extraordinary conditions exist " threatening the welfare, comfort and safety of the people of the state ". Within the limits of its powers as defined by the Constitution of the State and as limited by the Constitution of the United States, choice of the appropriate remedy for such conditions is then vested in the Legislature. When the legislative choice of a remedy is challenged on the ground that it transcends the limits placed by the Constitution of the State or the Constitution of the United States upon the power of the Legislature and that it impairs the obligation of a contract or deprives a person of his property without due process of law, the legislative finding that a threatening public emergency exists is not conclusive. Judicial inquiry is not precluded whether the remedy chosen is within the power of a State Legislature " construed in harmony with the constitutional limitation on that power." (*Matter of People* [*Tit. & Mtge. Guar. Co.*], 264 N. Y. 69, 84) but upon such an inquiry the legislative findings are entitled to great weight and the legislative remedy will not be stricken down unless its invalidity is clearly established.

An extraordinary remedy which is appropriate and legitimate in an exigency resulting from abnormal conditions may be inappropriate and beyond the limits of the power of a State if temporary impairment of the obligation of a contract is continued after the exigency has passed. (*Block* v. *Hirsh*, 256 U. S. 135, 157.) When this court sustained the validity of limitations upon the remedies of the holder of a bond and mortgage created by chapter 793 of the Laws of 1933, we said that " such legislation, reasonably seeking only *temporary relief,* is not unconstitutional ". (*Klinke* v. *Samuels, supra;* italics are new.) " It is always open to judicial inquiry whether the exigency still exists

upon which the continued operation of the law depends." (*Home Bldg. & L. Assn.* v. *Blaisdell, supra,* p. 442.)

Doubtless such a judicial inquiry would disclose that many — perhaps all — of the adverse conditions created by the " abnormal disruption in economic * * * processes " which, as the Legislature found, existed in 1933 and resulted in a " public emergency," disappeared before 1943. The Legislature did not, in 1943, find that these conditions still existed. It found only that the " serious public emergency " existing in 1933 and " *resulting* " from these conditions, still existed. In 1943 the fact that payrolls and savings bank deposits had increased in almost unprecedented degree was a matter of common knowledge. The Legislature could not ignore the great changes in the economic situation. On the other hand, an accumulation of past due mortgages resulting from the ten-year-old ban upon actions to foreclose mortgages for default in the payment of principal might reasonably cause apprehension that a flood of foreclosure actions would follow removal of the ban and might itself justify a statute reasonably calculated to stem the impending flood. Reports which legislative committees made to the Legislature in 1938 and 1943 as well as a message of the Governor called to the attention of the Legislature also the fact that abnormal conditions incident to a war economy or resulting from other causes might still constitute a threat " to the welfare, comfort and safety of the people of the state " and might call for the exercise of the legislative power to provide an extraordinary remedy for extraordinary conditions.

The presumption is that the Legislature " inquired and found " that under the conditions then disclosed there was need for a continuance of the suspension of the right of holders of bonds and mortgages to foreclose for default in the payment of the principal. (*Szold* v. *Outlet Embroidery Supply Co.,* 274 N. Y. 271, 278.) It is entirely unimportant whether the conditions then existing have created a new emergency, as said by the Governor in his message, or have, as the Legislature said, resulted in the continuance of an emergency itself created by conditions which have run their course. The question which the court must decide is whether the Legislature in the challenged statute has provided an appropriate remedy to tide over an exigency resulting from present conditions. We have said

in an analogous case that: "Whether an emergency exists or not, the test in each case is whether a situation exists which calls for the exercise of the reserved power of the state and whether the remedy adopted by the state is reasonable and legitimate." (*Matter of People* [*Tit. & Mtge. Guar. Co.*], *supra*, p. 94.) We conclude that the challenged statute meets that test.

The judgment should be affirmed, with costs.

LEWIS, J. (dissenting). In this action to foreclose a mortgage on real property a challenge by a mortgagee to the constitutionality of the 1943 Mortgage Moratorium Law (L. 1943, ch. 93) has been denied at Special Term. The defendants-mortgagors, who offered no proof in opposition to the plaintiff's case, have been awarded a judgment dismissing the complaint upon the ground that the evidence presented by the plaintiff-mortgagee failed to establish a cause of action.

Coming to us by direct appeal on constitutional grounds (Civ. Prac. Act, § 588, subd. 4) the case presents the question whether the undisputed facts of record afford a valid basis for the legislative finding upon which the challenged statute rests, viz., that the public emergency, which existed in 1933 — at the time of the enactment of section 1077-a of the Civil Practice Act (L. 1933, ch. 793) — continued and still constituted a public emergency on March 11, 1943, when chapter 93 of the Laws of 1943 became a law.

By the 1933 Mortgage Moratorium Law (L. 1933, ch. 793) the Legislature declared "* * * that a serious public emergency, affecting and threatening the welfare, comfort and safety of the people of the state and resulting from the abnormal disruption in economic and financial processes, the abnormal credit and currency situation in the state and nation, the abnormal deflation of real property values and the curtailment of incomes by unemployment and other adverse conditions, exists. Therefore, in the public interest, the necessity for legislative intervention by the enactment of the provisions hereinafter prescribed, and their application until July first, nineteen hundred thirty-four, is hereby declared as a matter of legislative determination." Then follow the moratory provisions which, during the emergency thus declared, suspended the maintenance of certain foreclosure actions and related actions there defined.

Thereafter, in each of the ten succeeding years (except in one instance where the extension was for two years [L. 1941, ch. 782, § 1]) the Legislature extended for a single year the moratory provisions of the 1933 Act, each renewal being based upon a finding that the serious public emergency declared to exist in 1933 had " continued " and was " still existing."

We come then to the statute here called into question (L. 1943, ch. 93) as to which it is important to note that, as in the nine preceding similar laws, the public emergency assigned as the reason for the mortgage moratorium legislation was not some new or different form of abnormality in " economic and financial processes " affecting public welfare within the State. The reason for each succeeding enactment was the same and is typically expressed in the legislative finding within section 1 of chapter 93 of the Laws of 1943 with which we are now concerned and which provides in part: " Section 1. The serious public emergency, *which existed at the time of the enactment of sections ten hundred and seventy-seven-a* * * * *of the civil practice act* as added by chapter seven hundred and ninety-three of the laws of nineteen hundred thirty-three * * * *having continued,* in the judgment of the legislature, *to the present time and still existing,* the provisions of such chapters * * * shall, notwithstanding any provision of such chapter, remain and be in full force and effect until July first, nineteen hundred forty-four * * *." (Emphasis supplied.)

Although we hold in proper respect the declaration by the Legislature that the same public emergency which called forth moratorium legislation in 1933 still existed in 1943, that declaration is not conclusive. " It is always open to judicial inquiry whether the exigency still exists upon which the continued operation of the law depends." (*Home Bldg. & L. Assn.* v. *Blaisdell,* 290 U. S. 398, 442.) " A law depending upon the existence of an emergency or other certain state of facts to uphold it may cease to operate if the emergency ceases or the facts change even though valid when passed." (*Chastleton Corp.* v. *Sinclair* [per HOLMES, J.], 264 U. S. 543, 547–8.) In a prior case which dealt with emergency legislation the same jurist had written — " A limit in time, to tide over a passing trouble, well may justify a law that could not be upheld as a permanent change." (*Block* v. *Hirsh,* 256 U. S. 135, 157; see, also, *Klinke*

v. *Samuels*, 264 N. Y. 144, 149; *Matter of People [Tit. & Mtge. Guar. Co.]*, 264 N. Y. 69, 95–6.)

Here the basis of the appellant's challenge to the 1943 Moratorium Law is the clause of the Federal Constitution (art. 1, § 10) which forbids enactment by a State of a law impairing a contract obligation. It is not denied that in the public emergency which concededly existed in 1933 the moratorium legislation of that year was a valid exercise of the State's essential reserved power and that the temporary suspension of foreclosure rights possessed by mortgagees was then apposite to emergency relief. " The economic interests of the State may justify the exercise of its continuing and dominant protective power notwithstanding interference with contracts. * * * ' the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power * * * is paramount to any rights under contracts between individuals.' " (HUGHES, Ch. J., writing in *Home Bldg. & L. Assn.* v. *Blaisdell, supra,* pp. 437, 439.) Accepting that rule as a statement of an appropriate and necessary principle of government, the appellant asserts that the exigency which fully warranted the enactment of the Moratorium Law of 1933 did not continue into the tenth year thereafter to afford a legal basis for the enactment of the 1943 statute. The appellant's submission is that the invalidity of chapter 93 of the Laws of 1943 is established by the record before us which is said to contain undisputed proof that the emergency of 1933 which concededly warranted the temporary suspension of the exercise by the appellant of its contract rights as a mortgagee, has not " continued " and was not " still existing " in 1943 when the Moratorium Law here in question became effective. If so, the judgment before us for review must be reversed. I pass to a consideration of the evidence.

Among the economic factors existing in 1933 which the Legislature found warranted the moratorium legislation of that year, was " the curtailment of incomes by unemployment." As to that factor the present record shows that between 1933 and 1943 there was in the State of New York an increase of 92½% in the

number of wage earners employed and an increase of 266% in weekly payrolls. In 1933 the average weekly earnings of employees was $21.90; in 1943 that average had increased 103.7% to $44.68. In 1933 the actual number of workers employed in manufacturing was 323,071; in 1943 that number had increased to 735,265.

Other exigent factors found and declared by the Legislature to exist in 1933 were an " abnormal disruption in economic and financial processes, the abnormal credit and currency situation in the state  *  *  *." The fact is within our judicial knowledge that the banks of the nation had been closed by a Federal Executive Order in 1933. In that year the Superintendent of Banks reported a shortage of currency in the State. At the close of that year his report stated — " Attention was at once centered upon plans for the issuance of scrip. And on March 6, 1933, the Governor asked the Legislature for an act authorizing the creation of a State-wide corporation to serve this purpose. Such a bill was passed immediately and the plans for the issuance of scrip against bank deposits moved swiftly forward and were not abandoned until it was definitely known that the National Government was prepared to offer a solution." That report speaks of conditions at or about the time of the " bank holiday " of 1933, nearly six months prior to the enactment of the 1933 Moratorium Law. The record shows however — on the question of improvement in general financial conditions within the State — that on December 31, 1935, the amount of demand and time deposits in all banks — in both commercial and savings banks — aggregated 13.2 billion dollars; on June 30, 1943, the total of those types of deposits had increased to 25.7 billion dollars, an increase of 95% and a maximum for all time. In 1933 the savings banks of the State lost 7.54% of their deposits; in 1943 the savings banks gained 8.57%. In 1933 savings bank depositors withdrew $392,000,000 more than they deposited; in 1943 the same type of depositors placed in savings banks $500,000,000 more than they withdrew. In 1933 the total amount of money in the nation was $45.49 per capita; in February, 1944, the amount of money in circulation was $151.22 per capita — an increase of more than three times the per capita figure of 1933. In 1933 the aggregate amount of money in circulation in the

nation was $5,720,764,000; on February 29, 1944, that aggregate figure had increased to $20,823,568,000.

The Moratorium Law of 1933 also mentions as a factor prompting the legislation of that year the existence of an " abnormal deflation of real property values ". Upon that subject the evidence is that between 1933 and 1944 there was a sharp decline in housing vacancies in the six largest cities of the State. It also appears that in those six cities for the year 1933 the average tax delinquency was 17.3% of the total taxes levied; in 1942 that average was 4.8%. There is evidence that on January 1, 1944, the savings banks of the State had available for new investment in real estate mortgages under section 235, paragraph 6 (d), of the Banking Law a sum in excess of one billion dollars. There is also the significant item of evidence that in 1943 the savings banks loaned on mortgages covering property outside the State — in Pennsylvania, New Jersey and Connecticut — approximately $100,000,000. Upon the same subject there is also testimony by experts that in the metropolitan area of New York City there was an active real estate market in 1943 and that in that year money was readily available to refinance mortgages on buildings constructed prior to 1931.

The Moratorium Law of 1943, like the nine similar statutes which preceded it, was temporary in operation. It was limited to the exigency which called it forth and which the Legislature expressly declared to be the emergency of 1933, " continued " and " still existing " in 1943. The operation of the Moratorium Law of 1943 could not validly outlast the emergency which prompted its enactment. It could not be so extended as to suspend the contract rights of the appellant-mortgagee beyond that emergency. (See *Home Bldg. & L. Assn.* v. *Blaisdell, supra,* p. 447.) The undisputed evidence to which reference has been made leads me to conclude that the emergency which caused the enactment of the Moratorium Law of 1933 was not " still existing " on March 11, 1943, when chapter 93 of the Laws of 1943 became a law. To adjudicate otherwise upon the evidence before us would be in disharmony with the constitutional limitation which the appellant rightly invokes. " Necessarily the power to declare a law unconstitutional is always exercised with reluctance; but the duty to do so, in a proper case, cannot be declined, and must be discharged in accordance

with the deliberate judgment of the tribunal in which the validity of the enactment is directly drawn in question." (*Pollock* v. *Farmers' Loan & Trust Co.*, 157 U. S. 429, 554.)

Accordingly I dissent and vote for reversal and the direction of judgment of foreclosure and sale in favor of the plaintiff.

LOUGHRAN, RIPPEY, CONWAY, DESMOND and THACHER, JJ., concur with LEHMAN, Ch. J.; LEWIS, J., dissents in opinion.

Judgment affirmed.