Chief Judge Desmond.
Two separate but related questions arise in this consolidated proceeding. We are first to decide whether, on the theory that his employment by the Communist Parties (N. Y. and U. S. A.) was not “ covered employment ”, respondent Albertson is ineligible for unemployment insurance benefits. Second, we must determine whether the Industrial Commissioner was legally justified in suspending the registration of the Communist Parties themselves as “ employers ” within the meaning of the Unemployment Insurance Law.
We agree with the Appellate Division that Albertson is not to be denied an unemployment insurance award solely because part of his base period of employment was with the Communist organizations. Nothing was proven beyond that bare fact. There is no statute or other precedent disqualifying him from coverage. His work with the Communist organizations was not shown to have been criminal, conspiratorial or traitorous. *83 Despite the equivocal status and illegal purposes of his employer, his own contract of hiring (unlike that in Matter of Clarke v. Town of Russia, 283 N. Y. 272) was not so completely illegal as to prohibit unemployment insurance coverage. It would be unreasonably punitive to hold that, because (the employer who paid unemployment taxes for him was engaged in an anti-American conspiracy, Albertson must lose his insurance. Since the striking of the parties from the list was as of March 26, 1957, there is no inconsistency in protecting the insurance rights of Albertson whose employment ended before that date.
As to the alleged rights of Communist Parties to recognition and listing, however, we disagree with the Appellate Division, The Industrial Commissioner in performing his statutory duty (Labor Law, § 571) of computing and collecting these taxes had necessarily to decide who were “ employers ” under the act (Matter of Electrolux Corp., 286 N. Y. 390, 397). In so doing, he could not ignore the Federal Communist Control Act (U. ¡3. Code, tit. 50, § 842) which declared that the Communist Party is "not entitled to any of the rights, privileges, and immunities attendant upon legal bodies created under the jurisdiction of the laws of the United States or any political subdivision thereof; and whatever rights, privileges and immunities which have heretofore been granted to said party or any subsidiary organization by reason of the laws of the United States or any political subdivision thereof are terminated”. We take that plain declaration and its absolute language to mean what it says, although we find no decisions construing it in this connection. It necessarily means that the artificial body or entity calling itself the Communist Party is to be deprived of all the ‘ rights, privileges, and immunities ” that other such entities have. The Appellate Division dealt with this statutory language by saying that the requirement of paying an unemployment insurance tax is not an “immunity or right” where the employer has been allowed by the State to exist, has in fact been allowed the exercise of other privileges and where no reason is shown why it should not pay this tax. Of course, paying a tax is not really claiming an “immunity” or “right” but with the payment of this particular tax goes a status and enrollment as an employer. Whatever value that status may have is being sought and claimed by the Communist Parties in this proceeding.
*84 The State offcers of New York, reading literally the Federal statute, have deprived the Communist Parties of their former places on the State’s offcial roll of employers. The Federal Government, although charged with the enforcement of its own Communist Control Act, is, we are told, still collecting unemployment insurance taxes from the Communist Parties. What the reason is for this position we do not know and there is not enough in the record to prove any binding Federal administrative construction of the Federal act. We know that the Communist Parties are allowed to use the mails, list themselves in the telephone books, hold public meetings and write letters to magazines (see Harper’s for May, 1960, pp. 6-8, communication signed by the party’s “National Educational Secretary”). But we are not here determining whether the reports of the demise of these organizations are exaggerated. The situation in our court is that these Communist Parties are demanding that they be restored to this State’s list of employers. They come as unincorporated groups claiming rights or privileges but all rights of unincorporated associations are created by and dependent upon ithe State. The Appellate Division recognized in its opinion that the State might by appropriate steps prevent the Communist Parties ‘ ‘ from engaging in any activity or existence ”. We think that the State of New York has already done so. The Attorney-General, its highest law oEcer, argues to us on this appeal that the unemployment insurance oEcers acted validly in denying further recognition to the Communist Parties.
We accept none of the arguments that this Federal Communist Control Act is unconstitutional. We do not think that it is a bill of attainder or ex post facto legislation. We see no denial of due process in the deprivation of these organizations of their status without a hearing. Section 841 of title 50 of the United States Code contains a Congressional finding that the Communist Party is not really a political party but ‘ ‘ in fact an instrumentality of a conspiracy to overthrow the Government of the United States ”, that it is dedicated “ to the proposition that the present constitutional Government of the United States ultimately must be brought to ruin by any available means, including a resort to force and violence ”, and that as an agency of a hostile foreign power it is “a clear present and continuing danger to the security of the United States,” Similar pro *85 nouncementis are found in a number of decisions of this court and of the United States Supreme Court (see Dennis v. United States, 341 U. S. 494, 547; Matter of Lerner v. Casey, 2 N Y 2d 355, 372, affd. 357 U. S. 468). These are not mere fiats or rhetorical flourishes but recognitions by courts and Congress of facts that are so well established and known that recognition of them without further proof is a right and duty (see East New York Sav. Bank v. Hahn, 293 N. Y. 622, 627, affd. 326 U. S. 230).
The administrative determination suspended the registration of the Communist Parties as of March 26, 1957 and the State has not accepted any reports or payment of contributions since that date. Since Albertson’s employment was earlier than that date there is no difficulty as to him. If there are or will be unemployment insurance problems as to other employees of these Communist Parties, decision on those problems will have to wait until the claims, if any, are presented in the usual way. Many corporations and bodies are considered not to be employers under the act (see Labor Law, § 560, subd. 4) and presumably their employees are aware of it.
The order of the Appellate Division should be modified by reversing so much thereof as sets aside the suspension of the registration of the employers-respondents and the decision of the Unemployment Insurance Appeal Board in this connection reinstated, otherwise the Appellate Division order should be affirmed, with costs to claimant-respondent against the Industrial Commissioner.