Chief Judge Desmond.
.Plaintiff has taken a direct appeal from the court of first instance to this court (Civ. Prac. Act, § 588, subd. 4) asserting the invalidity under the Federal and State Constitutions of 1961 amendments (L. 1961, ch. 337) to the Emergency Housing Rent Control Law. While extending the control law (first enacted in 1946) to 1963, the Legislature modified the existing provisions which set up procedures whereby landlords may obtain maximum rent adjustments based on recent sale prices by providing that:
“No application for adjustment of maximum rent valuation based upon a sale price valuation shall be filed by the landlord under this subparagraph prior to six months from the date of such sale of the property. In addition, no adjustment ordered by the commission based upon such sales price valuation shall be effective prior to one year from the date of such sale.” (Emergency Housing Rent Control Law, § 4, subd. 4, par. [a], subpar. [1], cl. [v].)
As revised in 1961, the law forbade retroactive changes in rent (§4, subd. 4, par. [a], subpar. [6]). The 1961 amendments were applicable to pending proceedings (§ 13).
On November 19, 1960 plaintiff-appellant contracted to purchase for $1,378,000 a rent-controlled apartment house in Manhattan. Title passed on February 20, 1961 and a week later appellant filed with the Rent Commission an application under subdivision 5 of section 33 of the State Rent and Eviction Regulations for the fixation of a reasonable rent computed as 6% return on valuation of $1,378,000 as shown by the sale price. On April 6, 1961 (this suit was commenced a few days later) and before commission action on the application was completed, the 1961 amendments were enacted. Plaintiff sues for a declaration that they are unconstitutional as to it in that an increase based on purchase price of this property cannot be obtained *267 until at least one year from the purchase date and that any such increase will be prospective only even though by the law as it existed when plaintiff bought the building such increases were retroactive to the date of the filing of the application but for not more than six months (see L. 1957, ch. 755; L. 1959, ch. 695).
Some history should be recalled. During part of the time (up to 1948) when residential rent control was governed by Federal statutes, retroactive increases were not permitted (see Wasservogel v. Meyerowitz, 300 N. Y. 125). In 1950 the State took over and from 1950 to 1951 there was a temporary freeze of New York City rents pending submission of a new State plan (see L. 1950, ch. 250). The 1951 State act (see chapter 443 of that year) provided for nonretroactive fixation of maximum rents at rates to produce a minimum return on property value but defined value generally as equivalent to the equalized tax assessment. Discretion, however, was by the 1951 law given to the State Administrator to adopt a valuation other than the adjusted assessment in cases where there had been a sale of the property during the year next preceding March 15, 1951 (see, as to discretion, Matter of Realty Agency v. Weaver, 7 N Y 2d 249, 252). The 1953 statute (see chapters 320 and 321 of that year) extended residential rent control to 1955 but broadened the Administrator’s powers so that he might use sale price as value where there had been a bona fide sale between March 15, 1951 and the date of the application. These increases, however, were not to be retroactive. While the 1953 statute was in effect, the administrative practice (confirmed by court decisions; see, for instance, Matter of Wile v. McGoldricJc, 286 App. Div. 826, motion for leave to appeal den. 309 N. Y. 1033) was to use the purchase price as a base unless special circumstances had affected the price.
Appellant stresses the fact that the courts (see Matter of 340 East 57th St. Corp. v. Weaver, 2 N Y 2d 799, and Matter of Florell Equities v. Weaver, 2 N Y 2d 982) held entirely invalid a commission regulation adopted while the 1955 statute (identical with the 1953 act) was in effect and which prohibited the use of a sale price as the valuation base in any instance where the property had been awarded an increase in the past, and which further prohibited the filing of an application for such an adjustment until the applicant had been owner for a year. *268 That regulation was, however, stricken not for unconstitutionality but because it was unauthorized by statute and contrary to any ascertainable legislative intent, and so was a usurpation by the commission of legislative power.
In 1957 for the first time the Legislature dealt with ‘ ‘ resale prices” and the fact or danger of spiraling prices on successive sales. While the use of a bona fide sales price was made mandatory instead of discretionary, the new act (L. 1957, ch. 755) gave the Bent Administrator discretion where there had been more than one sale within two years prior to the application to “ disregard the most recent of sales only if a prior sale within such two-year period was adopted as the valuation of the property” in a rent-increase proceeding. The legislative authorization to use not more than one sale in each two-year period was made in response to a recommendation by the Temporary Commission to Study Bents and Bental Conditions which had reported that the Administrator needed “ authority to curb any cycle of successive sales followed by applications for adjustments ” (see report, N. Y. Legis. Doc., 1957, No. 22, p. 23).
Turning now to the disputed 1961 additions, we first examine into the validity of the one-year delay and no-retroactivity rules. If these are found not to be intrinsically invalid, we must move to an inquiry as to whether they may constitutionally be made applicable to a sale arranged or consummated before the effective date of the 1961 amendments.
Appellant does not dispute the continuance of the housing emergency which is the predicate for these housing rent control laws. It cannot deny that prohibitions against rent increases may in an emergency be constitutional although they reduce the value of the property regulated and deprive its owner of what otherwise would be considered a fair return (see Bowles v. Willingham, 321 U. S. 503, 517; Teeval Co. v. Stern, 301 N. Y. 346, 362, cert. den. 340 U. S. 876). Appellant does suggest that the 1961 Legislature acted illegally when it added new ‘ ‘ police power restraints ’ ’ to the earlier controls without any new finding as to “intensification of emergency” warranting the increased restrictions. We know of no requirement for such a new declaration or description of conditions requiring tightening of controls. . The real question on this branch of the case is whether there was anything before the Legislature justifying the year-delay and nonretroactivity clauses added in 1961.
*269 There is, of course, not only an exceedingly strong presumption of constitutionality (Defiance Milk Prods. Co. v. Du Mond, 309 N. Y. 537, 540) but a further presumption that the Legislature has investigated for and found facts necessary to support the legislation (Lincoln Bldg. Associates v. Barr, 1 N Y 2d 413; East New York Bav. Bank v. Hahn, 293 N. Y. 622, affd. 326 U. S. 230). But, besides those generalities, we have a showing that the Legislature had before it when it legislated on this subject in 1961 three different reports all made in 1961 and the minutes of a public hearing held in Albany in March of that year by the Temporary Commission (see “ Survey Report on the Rental and Housing Market ” of the Temporary State Housing Rent Commission, Jan., 1961; Report of Governor’s Special Committee, Feb. 24, 1961; 1961 Report of the Temporary Commission to Study Rents and Rental Conditions, March 23, 1961 [N. Y. Legis. Doc., 1961, No. 23]).
Appellant says that these reports (the so-called Herman report made to the Governor by the State Rent Administrator and the report of the Governor’s five-man or “ Gaynor” committee) show that there had not been any widespread practice whereby rent increases were resulting from a series of successive sales at inflated prices with each resale used as a new base for rent calculation. It is true that the Herman report shows, in nine years, only a few such cases and no “ widespread practice ” of applications granted where there had been a prior grant on a lower sales price. However, the five-man committee’s report points out that it is the legislative purpose to provide the Administrator with authority to curb any such cycle. The committee recommended, therefore, the one-year delay and no-retroactivity safeguards. A month later (March 23, 1961) the Temporary Commission, a different body, reported to the Legislature as required by law (see L. 1948, ch. 675). In its report (N. Y. Legis. Doc., 1961, No. 23) it described public hearings held earlier that month in Albany at which much testimony had been taken. It adopted some of the five-man committee’s suggestions, including those with which we are concerned and which the Rent Administrator specifically urged at the hearing. Other speakers told of the “ alarming rate ” at which apartment buildings were changing ownership at spiraled prices. The Mayor of New York City informed the *270 Temporary Commission that “it is increasingly the practice to sell rent-controlled real estate at inflated prices which bear little relation to the existing rent rolls or market value ” and pointed out that under the then law there was nothing to prevent an increase based on that inflated price and then another sale two years later with a similar rent increase. A representative of a tenants’ association showed the committee newspaper advertisements indicating that sellers and buyers were taking advantage of this opportunity. All this shows a reasonable basis for legislative action to slow up the process—not so much to deprive owners of sales opportunities or buyers of adequate rents as to remove or prevent conditions creating inflationary spirals of prices and rents. The “ actual and manifest evil” which serves as a predicate for police power law-making can consist of a well-founded fear of future trouble. Purchases of rental property at high prices predicated on immediate rent rises could defeat the proper purposes of residential rent control. Thus, the writing of these precautions into the law was, as the Legislature saw it, reasonably necessary for the public welfare. Even if there were no record of any investigation, factual support for the legislation would be assumed by the courts to exist. And so appellant would have a heavy burden as to disputing the Legislature’s fact findings made after committee hearings and reports. Surely this record does not conclusively destroy those findings and any dispute as to underlying facts could not be presented on this direct appeal which brings up constitutional questions only (Civ. Prac. Act, § 588, subd. 4).
There remains appellant’s assertion that its constitutional rights were infringed when the 1961 statute was made to apply in this respect to premises purchased at an earlier date. But appellant did not have in any particular rule an interest so vested as to entitle it to keep the rule unchanged (Preston Co. v. Funkhouser, 261 N. Y. 140; Wasservogel v. Meyerowitz, 300 n. Y. 125, supra). In such situations the applicability and validity of statutes are determined as of the date we make our decision (Fruhling v. Amalgamated Housing Corp., 9 N Y 2d 541; Matter of Tartaglia v. McLaughlin, 297 N. Y. 419; Matter of Boardwalk & Seashore Corp. v. Murdock, 286 N. Y. 494).
*271 The judgment should he affirmed, with costs.
Judges Dye, Fuld, Froessel, Van Voorhis, Burke and Foster concur.
Judgment affirmed.