Quinn, J.
(dissenting). Defendant was tried twice before
juries on a six-count indictment. On the second trial the jury found him guilty of the crime of criminal impersonation and not guilty of the other counts submitted. On the first trial the count charging criminal impersonation had not been submitted to the jury because of the Trial Judge’s "trial order” granting the motion by defendant to dismiss it for insuffi *928 ciency of evidence. On the first trial the jury was unable to agree to a verdict on any of the counts submitted to it and, with the unconditional consent of defendant, was discharged.
Defendant’s trial the second time, on the same evidence, for criminal impersonation was authorized under the provisions of CPL 310.60 (subd 2), because of the discharge of the hung jury with the consent of defendant. That section provides in part: "When the jury is so discharged, the defendant or defendants may be retried upon the indictment. Upon such retrial, the indictment is deemed to contain all the counts which it contained at the time the previous trial was commenced, regardless of whether any count was dismissed by the court in the course of such trial.”
Defendant on this appeal assails this statutory provision on the ground that it flies in the face of the constitutional ban against double jeopardy; thus necessarily urging that the court’s dismissal for insufficiency of evidence of the count of criminal impersonation on the first trial is the same unchallengeable consummation as a verdict of acquittal by the jury. The Legislature however has equated a court’s trial order of dismissal with any other judicial ruling in the course of the. trial by the section under attack (CPL 310.60) and by making it appealable (CPL 450.20). Certainly it is not a finding or determination of the facts, reserved to the jury alone (People v Cignarale, 110 NY 23, 27), but a fallible, legal conclusion by the Trial Judge that on technical consideration, in his opinion, the evidence is of such insufficiency in point of law that the triers of the fact should not be permitted to attempt to rely on it as a basis for finding facts, beyond a reasonable doubt, establishing defendant’s guilt. (People v Ledwon, 153 NY 10.) To equate the Trial Judge’s legal ruling of the insufficiency of the evidence to the jury’s unappealable verdict of acquittal is to render infallible the Trial Judge’s ruling on the whole body of the evidence though inconsistently recognizing the same Judge’s capacity to err on every interim ruling throughout the trial in the piecemeal accumulation of the evidence.
Once a witness is sworn in a criminal prosecution the defendant is potentially in jeopardy, so that if the trial ends in acquittal, or fails of completion for some reason (other than it being impossible to proceed without manifest injustice to the public or the defendant himself) the defendant may not be retried without violating his rights under the Federal and *929 State Constitutions (US Const, 5th and 14th Arndts; NY Const, art I, § 6). These constitutional provisions have been traditionally construed to guarantee freedom from harassment by prosecuting officers through needless exposure to the personal strain and uncertainty of a second trial. (People v Barrett, 2 Caines 304, 308; United States v Jorn, 400 US 470; Matter of Bland v Supreme Ct of NY, 20 NY2d 552, 555; Matter of Nolan v Court of Gen Sessions, 11 NY2d 114.)
The constitutional ban against a second trial is not absolute. It has not been so since relaxation of the early English rule that a jury in a criminal case, once sworn, could not be discharged under any circumstances and, locked up without light, heat, food or drink, had to report a verdict or perish. In this country it has been traditionally construed to be conditional; the condition being that, so long as a retrial does not constitute needless prosecution for the purpose of harassment, upon good cause shown, the doctrine of no second trial shall yield to the manifest need to protect a vital public interest which on considerations of justice outweighs the need to promote the private good. (People v Barrett, supra.) The above-cited cases and many others to which they refer, are ample authority for the proposition that the individual’s right to a single trial has traditionally been held to yield to the right of the People to have interrupted, or incomplete trials, nullified and counted as no trials at all, where the interruption or failure of completion results from causes beyond the control of the People, such as, defendant’s own request, on apprehension of prejudice in no way attributable to the prosecutor, or, death or unforeseeable disability of Judge, juror or indispensable witness, or, invincible inability of diligently deliberating jurors seasonably to agree. The delicate business of balancing the public interest against the personal good in determining the particular circumstances in which the mandate against double jeopardy shall yield to the necessities of the effective administration of justice has given rise to a considerable number of reported cases at the highest levels of Federal and State adjudication (see, e.g., People v Paquette, 31 NY2d 379); but where, as here, it is unquestioned that prosecutorial harassment is not a motivating force and concededly the public interest requires a nullification of the first trial and a retrial of the defendant, it nowhere appears to have been held that the Legislature is without power to prescribe the scope of the new trial in embracing all or less than all of the *930 criminal charges at issue in the prior, nullified proceedings. (Cf. Kring v Missouri, 107 US 221, 225.)
Only where defendant on appeal has won a reversal from a conviction for a lesser degree than the crime charged in the indictment and the jury, though silent as to the higher degree, has been discharged without defendant’s consent, has it been held that he may not be retried for the higher degree of the crime as originally charged; because the jury has had the facts constituting both the higher and the lower degree submitted to it for consideration and in agreeing to convict him of the lower degree its verdict is equated to a tacit acquittal, on the facts, of the higher degree. (Green v United States, 355 US 184; People v Jackson, 20 NY2d 440, 449.) This same rationale has been applied where a defendant has been convicted of one of several crimes charged and the jury, though silent as to the other crimes, has been discharged without defendant’s consent. (People v Bloeth, 16 NY2d 505; People v Migliori, 271 App Div 798.) Such is not the case here. The first trial never having been concluded and the first jury having been discharged with defendant’s consent, but without ever having had the factual issue of criminal impersonation presented to it (by reason of defendant’s own motion), cannot be said to have had the opportunity of passing upon it so as to be deemed to have tacitly wrought an acquittal after trial.
"It is only in the event that an indictment or a count therein, or an information is dismissed, and such a ruling persists to and beyond the end of the proceedings or trial, that a defendant may be deemed to have been placed in jeopardy in the event that he is again charged with that same offense.” (People v Lemmons, 270 App Div 828.)
The Legislature must be deemed to have weighed the manifest necessity of protecting the public interest against the advantage and convenience of the individual defendant and to have found the ends of justice best served by treating a "trial order” of dismissal for insufficiency of evidence as an appealable ruling on the law, of radically less conclusive effect than acquittal by a jury.
"This presumption is * * * that the Legislature has investigated and found the existence of a situation showing or indicating the need for or desirability of the legislation (East NYSav Bank v Hahn, 293 NY 622, affd 326 US 230).” (Matter of Van Berkel v Power, 16 NY2d 37, 40.)
These considerations at least raise a doubt at this level of *931 adjudication, as to whether or not CPL 310.60 (subd 2) so clearly offends against the traditional construction given the double jeopardy provisions of the Federal and State Constitutions, that the statute cannot be given effect. In entertaining such doubt, and hence differing with the majority on the question of constitutionality, it is remembered that the presumption of constitutionality is so strong that before an enactment of the Legislature shall be struck down by the judicial branch of government the unconstitutionality of the statute must be demonstrated beyond a reasonable doubt. (People v Pagnotta, 25 NY2d 333, 337.)
A review of the evidence of the crime of criminal prosecution adduced on the second trial establishes it as amply sufficient to support the second jury’s verdict of guilt. Indeed, since it is asserted without dispute that this evidence is no different from that adduced for the same crime on the first trial, it would appear that the "trial order” of dismissal procured at the sole instance of defendant, by which the jury was denied opportunity of considering the count of criminal impersonation, on the first trial, was error and an appeal by the People under CPL 450.20 would have warranted a reversal.
The judgment convicting defendant of the crime of criminal impersonation and sentencing him to four months’ imprisonment should be affirmed.
Markowitz, P. J., and Lupiano, J., concur in Per Curiam opinion; Quinn, J., dissents in memorandum.
Judgment of conviction reversed, etc.