Anne F. Mead, J.
This is a motion to dismiss the complaint on grounds that a defense is based upon documentary evidence, under CPLR 3211 (subd. [a], par. 1), and that the complaint fails to state a cause of action, under CPLR 3211 (subd. [a], par. 7).
Plaintiffs were owners and occupants of a single-family residence located at 6 Kejaro Court, Centereach. Defendant held a mortgage on it dated October 27, 1971 securing $23,700. They found buyers for the premises who wished to purchase the property subject to the existing mortgage. On their behalf, plaintiffs’ attorney requested that defendant mortgagee either consent to a transfer subject to the existing mortgage or alternatively that they pay the balance of the principal due and have defendant waive the prepayment fee. Defendant consented neither to a sale subject to the existing mortgage, nor to waiver of the prepayment fee.
Plaintiffs’ complaint is based on section 254-a of the Real Property Law, labeled: ‘1 Right of election of mortgagee in certain cases. ’ ’ Plaintiffs sue for refund of the prepayments fee of $1,185 plus $500 attorney’s fees, totaling $1,685.
The statute in question, section 254-a of' the Real Property Law, became effective May 29, 1972 and recently was amended effective April 1, 1974. (L. 1974, ch. 119, § 5.) However, defendant’s motion papers dated September 5, 1974 cite the statute as Exhibit A-l without the pertinent changes. Section 254-a of the Real Property Law presently is as follows (new matter italicized) : “ § 254-a. Right of election of mortgagee in certain cases. If a bond or note, or the mortgage on real property, improved by a one to six family residence occupied by the owner, securing the payment of same, contains (1) a provision whereby the mortgagee retains the right to accelerate the due date for payment of the balance of principal upon a transfer or sale of such real property or by alienation of title of such real property due to an act or operation of law, and (2) a provision for payment of any charge, however denominated, in the *854 nature of a prepayment fee and if a mortgagor sells or transfers his property or if title to the mortgaged property is transferred by act or operation of law and the purchaser requests permission to assume the mortgage or take the mortgaged premises subject to the mortgage, but the mortgagee does not consent to such request and thereby necessitates prepayment of the mortgage, the mortgagee shall not levy a prepayment fee; provided, however, that the provisions of this section shall not apply to the extent such provisions are inconsistent with any federal law or regulation.” (Real Property Law, § 254-a, as amd. by L. 1974, ch. 119, § 5.)
Defendant’s first argument is that section 254-a of the Real Property Law does not apply to this transaction because plaintiffs did not allege that they occupied the premises or that the premises were a one or two family residence. However, both parties’ exhibits, and plaintiff’s affidavit indicates that plaintiffs were indeed occupants of a single-family dwelling and as such qualified for treatment under section 254-a of the Real Property Law.
Secondly, defendant argues that section 254-a of the Real Property Law does not apply to it because the statute became effective May 29, 1972 and the mortgage in question is dated October 27, 1971. Defendant contends that to allow the statute to preclude the charge of the prepayment fee would give the statute retrospective effect, thereby impairing a vested contractual right, and rendering it unconstitutional. However, there is a strong presumption in favor of constitutionality of statutes. (People v. Nebbia, 262 N. Y. 259.)
More significantly, if legislation is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end, it may not be stricken as unconstitutional, even though it may interfere with rights established by existing contracts. (Home Bldg. & Loan Assn. v. Blaisdell, 290 U. S. 398, 438; Matter of People [Title & Mtge. Guar. Co.], 264 N. Y. 69, 83; East New York Savs. Bank v. Hahn, 293 N. Y. 622, 627.)
The commercial rent law (L. 1945, ch. 3, as amd.) providing for rent regulation and ‘ ‘ emergency rent ’ ’ was held constitutional as applied to leases predating the law. The law was designed to prevent unjust, unreasonable and oppressive rentals accruing after passage of the law. The court stated: u the evils denounced in the statute flowed, not merely from leases which might thereafter be executed, but even more directly from leases already made, and those evils could not be remedied by regulations purely prospective in their application, although the *855 regulations adopted were only retroactive in that they applied to future payments of rent under pre-existing leases.” (Twentieth Century Assoc. v. Waldman, 294 N. Y. 571, 581.) Likewise, in the present situation, the legislative intent that the statute in question apply to pre-existing mortgages is clear, as demonstrated herein. To deny applicability of the statute to cases involving pre-existing mortgages would be to emasculate the statute and to frustrate the benevolent purpose for which the Legislature enacted it.
Furthermore, in this 'type of situation, judicial inquiry into the validity of grounds for exercising the State’s police power so as to impair pre-existing contracts is authorized. ‘ ‘ When the legislative choice of a remedy is challenged on the ground that it transcends the limits placed by the Constitution * * * and that it impairs the obligation of a contract * * * the legislative finding that a threatening public emergency exists is not conclusive. Judicial inquiry is not precluded * * * but upon such an iñquiry the legislative findings are entitled to great weight and the legislative remedy will not be stricken down unless its invalidity is clearly established.” (East New York Savs. Bank v. Hahn, 293 N. Y. 622, 627, supra.) Therefore the court will take notice of the fact that due to the present rampant inflation the cost of housing has soared to unprecedented heights, mortgage interest rates have never been higher, and construction money has never been so expensive. “ Too often, mortgage money cannot be obtained at any price * * * The situation is worse in large cities and, thanks' to the crazy-quilt patterns of state mortgage laws, the populous Northeast # * * Concentration on the free-standing single-family house may well be over.” (Time, October 28, 1974, pp. 88, 92.) Thus the court feels that the validity of the grounds for exercising the State’s police power so as to impair pre-existing contracts is indeed authorized.
The class of buyers and sellers of single-family homes is much more significant, larger and deserving of protection than a class of dancing students for which retroactive application of a statute to dancing-class contracts was upheld. “ To assume that the Legislature intended to except from the statutory protection * * * contracts executed prior to its effective date * * * overlooks the obvious legislative intent to afford protection to the public * * * So tested, this statute is not constitutionally invalid since it was intended to curb economic wrongs against consumers who relied on the franchise name ’’. (Totten v. Saionz, 38 A D 2d 630, 631.)
*856 It is the court’s opinion that section 254-a of the Real Property Law as amended is a statute addressed to the legitimate end of aiding certain classes of consumers and as such it is indeed constitutional. Upon approving the law, Governor Wilson stated that the statute would “ assist banking consumers by * * * enlarging prepayment rights of home loan borrowers * * * This bill will assist banking consumers by: * # * limiting penalty charges in connection with late payments of installments on mortgages * * * Existing law guarantees mortgagors the right to prepay mortgages * * * only after three years have passed from the date the mortgage was made. This bill establishes a statutory prepayment right for mortgagors on one to six family owner occupied residences * * * These provisions will significantly reduce the cost to a home owner who, because of a change in his employment or because of some other reason, is forced to sell his property within three years of the date of its purchase”. (L. 1974, ch. 119; McKinney’s Session Laws of 1974, Governor’s Memorandum, p. 2083.)
.Significantly, the statutes involving prepayment penalties have accompanied other important consumer-oriented legislation; e.g., the original statute, section 5-501 (subd. 3, par. b) of the General Obligations Law" was part of the usury law, and was passed in conjunction with the statute allowing the Banking Board to prescribe the pate of interest. The statute as amended April 1, 1974 was passed in conjunction with new laws granting the Banking Board power to prescribe the minimum rate of interest on mortgage escrow accounts and mandating mortgage investing institutions to pay interest on deposits in escrow. (L. 1974, ch. 119.) Thus it is clear that the State has a legitimate and compelling concern for the general welfare of its people in enacting consumer-oriented legislation of this type, and the State’s sovereign right to promote the general welfare of its citizens is paramount to any rights’ under contracts between individuals. (Farrell v. Drew, 19 N Y 2d 486.)
The legislative history of the statute in question indicates beyond a doubt that the rule precluding prepayment penalties was designed to apply to mortgages already in existence and not merely to mortgages made subsequent to the effective date of the statute. In 1968 the prepayment penalty prohibition first appeared as a new paragraph b of subdivision 3 of section 5-501 of the General Obligations Law, in conjunction with the amended laws on usury, and the prescription of the rate of interest by the Banking Board. (L. 1968, ch. 349, § 1.) This statute was never repealed but was amended to confine the prepayment penalty to *857 loans made subsequent to April 1, 1974 and prepaid during the first year of the loan if the loan contract expressly provided for the penalty. (L. 1974, ch. 119, § 3.) The previous rule had limited the penalty to loans prepaid only after three years.
Significantly, the Legislature did not limit application of the original law to loans made subsequent to the effective date of the statute, but instead clearly stated that the statute should apply only to loans made on or before September 1, 1971, the date on which the Banking Board’s authority to prescribe a maximum interest rate would cease. (L. 1968, ch. 349, § 13.)
Section 254-a of the Beal Property Law was enacted in 1972 and was designed to protect homeowners from the double liability of being required to pay both the balance of the principal and also a prepayment fee upon transfer of the property when the mortgagee rejects a request to take subject to or assume the mortgage. (L. 1972, ch. 421.) The statute became effective May 29, 1972, and was later amended, effective April 1, 1974. (L. 1974, ch. 119, § 5.) Nothing in the statute as it previously existed or as amended limits its application to mortgages dated subsequent to the effective date of the statute. In fact the inference that mortgages dated before the effective date of the statute are subject to it is clear: the Legislature deliberately excepted mortgages dated before the date of enactment of the two preceding companion laws (General Obligations Law, § 5-501, and Banking Law, § 293) to section 254-a of the Beal Property Law, but placed no such limitations on section 254-a of the Beal Property Law. (See L. 1974, ch. 119, §§ 3, 4, 5, 7.)
Therefore the court holds that section 254-a of- the Beal Property Law does indeed apply to the facts of this case, and also is constitutional as applied, because it is a valid exercise of the State’s power to promote the general welfare of its citizens.
Defendant’s third argument is that before it can be charged with denying permission for a subject to transfer, a legitimate and firmed-up request must have been submitted. Because “ the proposed or actual transfer facts were never relayed to the defendant, ’ ’ defendant argues that its consent to a valid request was never solicited. In support of this contention defendant cites certain documentary evidence, i.e., the sales contract and plaintiffs’ letter of January 21, 1974 from which it infers that a transfer subject to the mortgage was never seriously contemplated. Defendant argues that the spirit of plaintiffs.’ letter is not one of request, but rather one of desiring, avoidance of the prepayment fee.
*858 The letter in question is as follows: “ Please be advised that the above captioned premises are about to be conveyed. Since we are in a position to sell the premises subject to your existing mortgage, with the purchaser assuming same, or satisfying your, mortgage, kindly advise the undersigned whether you would waive the prepayment penalty in consideration of the mortgagor satisfying your loan. Would you also please advise as to the amounts necessary to satisfy the existing mortgage, as well as that necessary if selling same subject to your existing mortgage ’ ’.
Defendant’s Exhibit E makes clear the reasons for the request. It is a letter from plaintiffs’ attorney to defendant’s attorney dated June 26,1974 a month after the closing. “ The fact of the matter is that the Rogers could very well have sold the property to the purchasers subject to the existing mortgage and held a very small second mortgage. It certainly would have been to their advantage in view of the fact that they would have saved the $1,000.00 prepayment penalty. In addition, it would have been to the advantage of the purchasers in view of the fact that they would have saved on the interest rate as well as some of the various closing costs.”
Defendant’s argument cannot stand, because it is apparent from the letter of request (quoted above) that the request was legitimate and that it in fact inquired into what terms defendant would require. Also, defendant’s Exhibit A is a letter dated January 25, 1974, four days after the request, which indicates that defendant in fact flatly refused the request for permission to transfer subject to the existing mortgage, and required instead that a modification agreement and a higher rate of interest would be charged if defendant’s committee approved the purchasers. The pertinent section of the letter is as follows: “ In reply to your letter of January 21st and our phone conversation regarding sale subject to the existing mortgage, please be advised the mortgage agreement contains clause numbered 9d which states mortgage cannot be sold subject to without the Bank’s consent. To submit this mortgage to our committee for approval I would require the following: * # * Mortgage interest rate would be the prevailing rate of interest at the time of closing, which is 8%% at the present time. A Modification Agreement would have to be drawn. The legal fee for drawing this Agreement is $150.00.”
’ In effect defendant, in the above letter, denied consent to any proposed transfer subject to the existing mortgage, and instead held out the possibility of a modification agreement. After a flat *859 denial of consent to the proposed subject-to transfer, defendant Cannot now .be heard to complain that the request was not legitimate in that no transfer facts were presented. Had defendant not flatly denied the request, transfer facts would in all probability have evolved.
Sectibn 254-a of the Real Property Law contains no requirement that a request for permission to take the mortgaged premises subject to the mortgage be accompanied by details and transfer facts, and the court will not read such language into the statute. The court will not inquire into the “ spirit ” of the request. Where a request to transfer subject to the existing mortgage is flatly denied, there is no duty to subsequently submit to mortgagee details of the proposed transaction. Thus the • court finds defendant’s argument without foundation.
For the reasons stated above, defendant’s motion to dismiss the complaint is in all respects denied.
Motion costs to plaintiffs.