Cooke, J.
(dissenting). I dissent and vote to affirm the judgment of Special Term, which declared that section 14 of the New York State Financial Emergency Act for the City of New York (L 1975, chs 868, 869, 870) is constitutional and *515 valid and does not violate the provisions of section 7 of article V of the Constitution of the State of New York.
Section 7 (subd 2, par [f]) of chapter 868 of the Laws of 1975, as amended by section 14 of chapter 870 of said laws, authorizes and directs the trustee (Comptroller of the State of New York) of the New York State Policemen’s and Firemen’s Retirement System and the New York State Employees’ Retirement System to purchase $125,000,000 of bonds of the Municipal Assistance Corporation for the City of New York. In effect, the plaintiffs in each action seek declaratory judgment that said section as so amended be declared unconstitutional, as violative of section 7 of article V of the Constitution of this State which provides: "After July first, nineteen hundred forty, membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired.” They contend, and the majority agrees, that the mandate of this legislation, divesting the Comptroller of discretion in this respect, is an impairment of benefits constitutionally prohibited.
Initially, we must recognize that this constitutional challenge, as all others, must be weighed with full recognition of certain thoroughly settled principles. Every legislative enactment is clothed with an exceedingly strong presumption of constitutionality (I. L. F. Y. Co. v Temporary State Housing Rent Comm., 10 NY2d 263, 269, app dsmd 369 US 795), accompanied by a further presumption that the Legislature has investigated and found facts necessary to support the legislation (Lincoln Bldg. Assoc. v Barr, 1 NY2d 413, 415; East N. Y. Sav. Bank v Hahn, 293 NY 622, 628, affd 326 US 230). The party alleging unconstitutionality has a heavy burden, one of demonstrating the infirmity beyond a reasonable doubt, and only as a last resort will courts strike down legislative enactments on the ground of unconstitutionality (Matter of Roosevelt Raceway v Monaghan, 9 NY2d 293, 303, app dsmd 368 US 12; Wiggins v Town of Somers, 4 NY2d 215, 218-219; Matter of Ahern v South Buffalo Ry. Co., 303 NY 545, affd sub nom. South Buffalo Ry. Co. v Ahern, 344 US 367). In Matter of Taylor v Sise (33 NY2d 357, 364-365), it was stated: "There is generally a very strong presumption that the Legislature has investigated and found the existence of a situation showing or indicating the need for or desirability of the legislation’ * * * More specifically, the situation under consideration affirma *516 tively demonstrates that the Legislature responded to a then generally acknowledged need * * * Assuming that there weré other effective methods by which to accomplish the same end, this court should not substitute its judgment for that of the Legislature in determining the particular method to meet a given need”.
There is no basis for the finding of the majority that the discretion of the Comptroller, as "trustee”, is a benefit within the contemplation of the Constitution. Rather, all prior pertinent case law would lend support to the conclusion that section 7 of article V of the Constitution is not a bar to the legislative measure under scrutiny, since the term "benefits”, in this context, refers only to pecuniary benefits (see Birnbaum v New York State Teachers Retirement System, 5 NY2d 1 [adoption of mortality table, which reduced the amount of money payments by about 5%, unconstitutionally effected a diminution and an impairment of the benefits of the retirement system]; Matter of Ayman v Teachers’ Retirement Bd. of City of N. Y., 9 NY2d 119 [mortality tables in effect immediately prior to July 1, 1940 to be used to calculate annuity]; Kranker v Levitt, 30 NY2d 574 [cash payments for accumulated vacation credits properly included in computation of retirement benefits]; Matter of Weber v Levitt, 34 NY2d 797 [termination pay attributable to last three years of service properly includable in the final average salary for pension purposes]; Kleinfeldt v New York City Employees’ Retirement System, 36 NY2d 95 [statutory limitation of amount of increased compensation, which may be considered in determining final average salary for retirement purposes, not to be applied retroactively]). Within this decade, it has been determined with a degree of definiteness that "said constitutional provision created a contractual right to protect the members of the retirement system in pecuniary matters — i.e., prohibiting any action which would impair or diminish the member’s right to payment of pensions, annuities and related monetary advantages” (Brown v New York State Teachers Retirement System, 25 AD2d 344, 345, affd on opn of App Div 19 NY2d 779). In Brown, it was held that the term "benefits” in this constitutional provision did not include representation on the Retirement Board of the New York State Teachers Retirement System and that the decrease in teachers’ voting strength could not make it easier for the board to reduce or impair their pecuniary benefits.
*517 Since "benefits” as employed in the constitutional provision are pecuniary in nature, the legislation in question does not, by authorizing and directing the purchase by the Comptroller of bonds of the Municipal Assistance Corporation, impair the benefits of members of the retirement systems. Absent a showing that there will be an impairment, either in abolition or diminution of pensions, annuities or related monetary advantages, a conclusion of unconstitutionality is impermissible. Under chapter 169 of the Laws of 1975, effective June 10, 1975, section 98 of the State Finance Law was amended, by the addition of subdivision 17 thereto, so as to authorize the Comptroller to invest in "[b]onds and notes issued for any of the corporate purposes of the municipal assistance corporation for New York City.” Contrary to the unestablished premise upon which the majority relies, the legislative mandate to invest funds would not result, in and of itself, in a reduction in or depletion of the assets of the pertinent retirement systems. The ultimate value of the specific bonds designated for purchase is a question of fact and is not germane to the consideration of the legislation’s constitutionality.
There is no express provision in our State Constitution which limits the Legislature’s power in directing the Comptroller in respect to the investment of retirement system funds, nor is there any warrant that such a restriction be "necessarily implied” from section 7 of article V of the Constitution. The practical construction put upon a constitutional provision by the Legislature is entitled to great weight, if not controlling influence, when such construction has continued in operation over a long period of time (Matter of Kolb v Holling, 285 NY 104, 112; Broderick v Weinsier, 278 NY 419, 425-426). The Legislature has imposed restraints on investments by the Comptroller ever since the adoption of said section of the Constitution and even prior thereto (see, inter alia, L 1920, ch 741; L 1940, ch 593; L 1957, ch 841), thus supporting the interpretation that section 7 does not yield a limitation by implication upon the Legislature’s right to oversee investments of retirement funds. Subject only to the restrictions contained in the State and Federal Constitutions, the power of the Legislature is plenary (Village of Kenmore v County of Erie, 252 NY 437, 441; People ex rel. Peaks v Voorhis, 243 NY 420, 423), and, in the absence of a constitutional bar to the authority of the Legislature regarding such investments, it must be concluded that the power exists.
*518 In order to accept the majority’s position, however, that the discretion of the Comptroller is a benefit of membership in either retirement system, it must be presumed that sections 13 and 313 of the Retirement and Social Security Law have been read into section 7 of article V of the Constitution. These statutes, containing similar provisions, establish the framework within which the funds of the New York State Employees’ Retirement System (§ 13) and the New York State Policemen’s and Firemen’s Retirement System (§ 313) shall be managed and name the Comptroller as "trustee” of both funds. Explicitly in the statutes are situations where the discretionary power of the Comptroller is circumscribed and limited, both as to the type and amount of the investment permitted. For example, the maximum amount that can be expended in certain obligations of industrial corporations or even railroads is 30% of the assets of the funds, irrespective of how great the rate of return on the investment. This discretion is further limited by the legislative directive that the Comptroller "shall * * * be subject to all terms, conditions, limitations and restrictions imposed by this article and by law upon the making of such investments” (Retirement and Social Security Law, § 13, subd b; § 313, subd b). Thus, it appears clear that the discretionary authority granted to the Comptroller in the investment of retirement funds is a creature of legislative origin, subject to those "terms, conditions, limitations and restrictions” like the instant directive enacted by the Legislature. This is not, therefore, a matter of constitutional stature, nor was this power intended or even contemplated as a "benefit” when section 7 of article V was promulgated. If this were not so, then any curtailment of the Comptroller’s discretion in the investment of funds of the systems, being a "benefit” that cannot be diminished or impaired, would, of necessity be likewise unconstitutional. Surely, the majority would be unwilling to strike down as unconstitutional other existing statutory enactments limiting or enlarging the Comptroller’s discretion as trustee (see Retirement and Social Security Law, §§ 13, 313; State Finance Law, § 98).
The declaration of unconstitutionality here is contrary to accepted canons of constitutional construction, inconsistent with existing case law, and violative of the doctrine of separation of powers.
Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg *519 concur with Chief Judge Breitel; Judge Cooke dissents and votes to affirm in a separate opinion.
In each case: Judgment modified, without costs, in accordance with the opinion herein.