OPINION OF THE COURT
Edwin Kassoff, J.
This is a motion by plaintiffs, tenants of certain garden apartments located in Queens County, for summary judgment declaring that section 26-511 (c) (9) (b) of the Rent Stabilization Law (RSL; Administrative Code of City of New York, tit 26, ch 4) is violative of the Equal Protection and Due Process Clauses of the NY Constitution and more particularly, article I, §§ 6 and 11 thereof. Defendants, owners of the individual units, and the Division of Housing and Community Renewal (hereinafter DHCR) cross-move for summary judgment dismissing the complaint and for judgment declaring RSL § 26-511 (c) (9) (b) to be constitutional.
Plaintiffs allege that they are rent-stabilized tenants in various garden apartment complexes and have received notices that their leases will not be renewed by their respective landlords. The alleged basis for the nonrenewal policy results from the conversion of the garden apartment complexes into individual units by providing separate boiler, sewer and water lines for each unit and obtaining a certificate of occupancy for each unit as a one, two or four-family house. The houses are then sold to individuals who each, upon the expiration of the rent-stabilized tenant’s lease, apply for personal use occupancy pursuant to RSL § 26-511 (c) (9) (b).
Pursuant to the order of the former New York City Conciliation and Appeals Board dated March 17, 1983 and affirmed by the Supreme Court, New York County (Orin Mgt. Corp. v New York City Conciliation & Appeals Bd., NYLJ, Mar. 7, 1984, at 6, col 1) it was held that rent-stabilized tenants occupying garden apartments which are subdivided into one or multiple family houses do not lose their rights under the Rent Stabilization Law. The extension of rent-stabilized status to such tenants is codified in section 2520.11 (d) of the Rent Stabilization Code (9 NYCRR parts 2520-2530). Plaintiffs contend, however, that they should be accorded the additional protections granted by General Business Law § 352-eeee (2) (c) (ii) to rent-stabilized tenants of buildings that have been *342 converted pursuant to noneviction plans into cooperative or condominium ownership. The General Business Law regulates the contents of offering statements or prospectives in the sale of cooperatives and condominiums. It specifically requires noneviction conversion plans to include language prohibiting the eviction of rent-stabilized tenants based upon owner use and occupancy. Section 2524.4 (a) (1) of the Rent Stabilization Code, in conformity with the prohibition contained in section 352-eeee of the General Business Law, provides that tenants in a noneviction conversion plan pursuant to the General Business Law may not be evicted on the ground of owner occupancy.
It is argued by plaintiffs that when buildings undergo noneviction cooperative or condominium conversion, the rent-stabilized tenants enjoy absolute protection against personal use occupancy evictions. However, where, as alleged in the present case, the landlord converts its garden apartment complex into separate units and sells them as houses to individual owners, the rent-stabilized tenants are subject to eviction based on owner use. Plaintiffs allege that RSL § 26-511 (c) (9) (b) as enacted and applied sets up grounds for eviction from rent-stabilized apartments which are not based on reasonable objective standards or classifications and is, thus, unreasonably discriminatory and violative of plaintiffs’ equal protection and due process rights. The court notes that while plaintiffs allege in their complaint that the statute is unconstitutional on its face, plaintiffs’ arguments are addressed solely to the statute as it has been applied to rent-stabilized tenants in converted garden apartments.
In opposition, defendants assert that the Legislature carved out an isolated exception not for arbitrary reasons but based upon a substantial distinction with a proper relation to the object classified and the purpose sought to be achieved. As a result of the substantial number of rent-stabilized buildings undergoing cooperative and condominium conversions, thousands of rent-stabilized tenancies were at jeopardy in that once a building was converted, the purchaser of the shares for a particular apartment would be entitled to recover the apartment for his own use. The Legislature deemed it appropriate to classify those rent-stabilized tenants within such cooperatively converted premises as entitled to additional protection not afforded any other class of rent-stabilized tenant. The plaintiffs in the present case are treated similarly to all other rent-stabilized tenants not occupying apartments in buildings *343 converted into cooperative or condominium ownership. Thus, they fall within the classification of rent-stabilized tenants similarly situated upon which the law operates alike.
Constitutional analysis on equal protection grounds provides that "[u]nless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest” (New Orleans v Dukes, 427 US 297, 303). In the area of rent classifications and regulations a low level of judicial scrutiny is afforded to legislation challenged as violative of equal protection. (People ex rel. Off. of Rent Admin., Div. of Hous. & Community Renewal v Berry Estates, 87 AD2d 161, 175, affd 58 NY2d 701; Reiner-Kaiser Assocs. v McConnachie, 104 Misc 2d 750; see also, Ballard v Rockville Centre Hous. Auth., 605 F2d 1283.) Every intendment is in favor of the statute’s validity so that the very heavy burden of demonstrating unconstitutionality beyond a reasonable doubt rests upon the party who attacks a statute as unconstitutional. Only as a last unavoidable result do courts strike down a legislative enactment as unconstitutional (cf., Benson Realty Corp. v Beame, 50 NY2d 994, 995; I.L.F.Y. Co. v Temporary State Hous. Rent Commn., 10 NY2d 263, 269; Wiggins v Town of Somers, 4 NY2d 215, 218; Lincoln Bldg. Assocs. v Barr, 1 NY2d 413, 415).
Under the rational basis standard, so long as a classification created by regulatory legislation bears some reasonable relationship to a legitimate State purpose it does not offend the Constitution (Montgomery v Daniels, 38 NY2d 41). The requirement that the methods and classifications employed be rational does not mean that they must be flawless or engender absolute equality (Dandridge v Williams, 397 US 471, 485). If the classification has some "reasonable basis”, it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality” (Lindsley v National Carbonic Gas Co., 220 US 61, 78). Moreover, the Equal Protection Clause "does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all” (Dandridge v Williams, supra, at 486-487). It is enough that the State’s action be rationally based and free from invidious discrimination. Courts must presume that "the legislative body has investigated and found the existence of a situation *344 showing or indicating the need for or desirability of the ordinance, and, if any state of facts known or to be assumed, justifies the disputed measure, [the] court’s power of inquiry ends” (Lighthouse Shores v Town of Islip, 41 NY2d 7, 11-12).
With respect to the disparity between section 26-511 (c) (9) (b) of the Rent Stabilization Law and section 352-eeee of the General Business Law, the question to be decided is whether there is a rational basis for protecting rent-stabilized tenants in occupancy of buildings converted to cooperative or condominium ownership against owner-occupancy eviction, while not protecting stabilized tenants situated in garden apartments converted into individual houses (see, Daubner v Harris, 514 F Supp 856, affd 688 F2d 815; People ex rel. Off. of Rent Admin., Div. of Hous. & Community Renewal v Berry Estates, supra).
The purpose of enacting the owner-occupancy exclusions contained in section 352-eeee of the General Business Law, and, as included in section 2524.4 (a) (1) of the Rent Stabilization Code, was set forth by the Legislature as follows: "The legislature hereby finds and declares that the conversion of residential real estate from rental status to cooperative or condominium ownership is an effective method of preserving, stabilizing and improving neighborhoods * * * that it is sound public policy to encourage such conversions while, at the same time, protecting tenants in possession who do not desire or who are unable to purchase units in which they reside from being coerced into vacating such units * * * or into purchasing such units under the threat of imminent eviction; that in the city of New York the position of non-purchasing tenants is worsened by a serious public emergency characterized by an acute shortage of housing accommodations * * * that preventive action by the legislature in restricting rents and evictions during the process of conversion from rental to cooperative or condominium status is imperative” (L 1982, ch 555, § 1).
In view of the magnitude of the potential displacement of rent-stabilized tenants from buildings converted to cooperative or condominium ownership during the 1980’s the Legislature could have rationally concluded that the possibility of undue harm to that class of rent-stabilized tenants was greater than for all other rent-stabilized tenants and that it warranted a special exemption from the owner-occupancy provisions of RSL § 26-511 (c) (9) (b). In contrast, it is conceivable that the Legislature could have reasonably concluded that the physical alteration of garden apartments into individual houses, a less *345 prevalent form of conversion of rent-stabilized buildings into private ownership, did not pose a threat to the public interest and general welfare in the same magnitude as the threat posed to stabilized tenancies by the steady increase of cooperative and condominium conversions in the City of New York (see, Governor’s Approval Mem, L 1982, ch 555, reprinted in 1982 McKinney’s Session Laws of NY, at 2616-2617). Moreover, at least one court has held that there is a rational basis for treating cooperatives differently than one or two-family houses since they are fundamentally different entities (Clear-view Gardens Fourth Corp. v Michael, 110 Misc 2d 1022).
It is not violative of equal protection for the Legislature to "partially ameliorate a perceived evil” by enacting special protections applicable only to those affected by the most rampant forms of the evil (New Orleans v Dukes, 427 US 297, 303, supra; see also, Katzenbach v Morgan, 384 US 641; Williamson v Lee Opt. Co., 348 US 483). Had the Legislature wished to expand the exemption from owner-occupancy evictions to rent-stabilized tenants occupying garden apartments converted into individual houses, it could easily have done so. It has instead chosen not to do so, and, even though this court is sympathetic to the plaintiffs’ position, a court may not usurp the responsibility and obligation which reposes solely with the Legislature (cf., Riley v County of Monroe, 43 NY2d 144, 149).
The consequence of plaintiffs’ failure to rebut the presumption of constitutionality is that defendants are entitled to a declaration of constitutionality (Benson Realty Corp. v Beame, 50 NY2d 994, 995, supra, citing Lanza v Wagner, 11 NY2d 317, 334).
In accordance with the foregoing, the motion by plaintiffs is denied. The cross motion by defendants Jose Diaz, Teddy Giatis and Eleni Giatis and cross motion of DHCR for summary judgment dismissing the complaint are granted and it is declared that section 26-511 (c) (9) (b) of the Rent Stabilization Law as applied to the plaintiffs, rent-stabilized tenants occupying garden apartments converted into individual houses, is constitutional.